# WILLIAM A. JOHNSON v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

April 30, 1954.

No. 36,107.

---

[1]Reported in 64 N. W. (2d) 372.

*Donald A. Chapman,* for appellant.

*Thomas Mohn, Faegre & Benson, Wright W. Brooks,* and *Paul J. McGough,* for respondent.

MATSON, JUSTICE.

Plaintiff appeals from an order denying his motion to set aside a directed verdict and grant a new trial.

This is an action under the Federal Employers' Liability Act by an employee for damages for injuries suffered in a head-on collision between two trains.

On June 2, 1951, at 7:10 a. m., a 157-car freight train left Stockton, Illinois, westbound for Oelwein, Iowa. William Johnson, the plaintiff, was the engineer of the five-unit Diesel which was pulling this train. Before leaving, the crew, including the plaintiff, received copies of an order notifying them that an eastbound freight would be held on the main line 15 miles west at North Hanover until 8:20 a. m. Pursuant to this order the westbound train was to go into the siding at North Hanover so that the eastbound train could proceed on the main line, since part of the right of way between Stockton and North Hanover was single-tracked. The westbound train proceeded past Golden (the point at which the single track began) and about three to five miles west of Stockton when the breaking of an air hose set the emergency brakes so hard that the resulting strain on the couplings broke a knuckle on the 58th car, separating the train at that point. Repairs were begun immediately, the broken knuckle was replaced, and the train recoupled. By then it was 8:08 a. m., or only 12 minutes until the eastbound train would be authorized to leave North Hanover.

At 8:08 a. m. the conductor ordered the Diesel detached from the train in order that they might be able to proceed west in time to warn the eastbound train of the situation. In the Diesel at that time were the engineer (plaintiff), the conductor, the fireman, and the head brakeman. The conductor stated that he wanted to go all the way to North Hanover which was nine miles from the point where the train was stalled. Plaintiff intended to stop at Woodbine, one to two miles west of the stalled cars, and put out a flag, but when he began to slow down the conductor ordered him to "keep going." They then proceeded to Elizabeth, some four miles farther. Plaintiff wanted to stop here and halt the eastbound train when it came past, but the conductor again told him to keep going. At the moment they passed the switch west of Elizabeth it was 8:17 a. m., which gave them three minutes to get to North Hanover which was three miles west. From Elizabeth to North Hanover the speed was increased to 55 to 60 miles per hour in hope of getting there before the eastbound train started out. The plaintiff was holding his watch in one hand and glanced at it frequently since every second counted. Fifteen seconds before 8:20 a. m. plaintiff decided that they were not going to make it, and he began applying the brakes with the intention of stopping, setting out a warning flag, and backing up. As the Diesel was being slowed down, the eastbound train (also a Diesel) appeared around a curve 1,000 to 1,600 feet ahead. By this time it was approximately 8:21 a. m., and the westbound train had lost any right to be on the main line.

At the moment the trains came within sight of each other, the westbound train, under the control of plaintiff, was going approximately 45 miles per hour, and the eastbound train was going 18 to 20 miles per hour. Plaintiff applied the emergency brakes, and the other three members of the crew jumped out of the engine by the side doors. Plaintiff was unable to jump because the others got to the doors first. At the moment of impact the westbound train was going 22 miles per hour and the eastbound train was going approximately 18 miles per hour. Plaintiff was pinned in the Diesel for one

and one-half hours. He received permanent injuries to his leg and hip and remained in the hospital for six months.

Plaintiff commenced an action against the defendant railroad company to recover damages for his injuries. When plaintiff rested, defendant moved for a directed verdict which was granted. This appeal is from the order denying plaintiff's motion to set aside the directed verdict and grant a new trial.

We are concerned with issues of: (1) Whether under the Federal Safety Appliance Act the duty of the carrier to use equipment that will not fail from defect is an absolute one which cannot be evaded by a showing of due care, (2) proximate cause, and (3) whether plaintiff's violation of a general cautionary regulation is a bar to his action.

■ Under the Federal Safety Appliance Act (45 USCA, § 1, *et seq.*) the breaking of the train coupler (irrespective of the presence or absence of either due care or negligence on the part of the defendant carrier and without regard to any latent defect in the coupler's manufacture or whether the coupler was subjected to strain beyond its capacity) created an absolute liability for damages for injuries *proximately resulting* therefrom,[2] in whole or in part, to a plaintiff-employee, and any action brought under the Federal Employers' Liability Act (35 Stat. 66, 45 USCA, § 53) to enforce such absolute liability is not barred by plaintiff's contributory negligence (or assumption of risk[3]) since contributory negligence goes only to a proportionate diminution in the amount of the damages.[4] The duty to use equipment that will not fail from defect, overstrain, or

[2]O'Donnell v. Elgin, J. & E. Ry. Co. 338 U. S. 384, 70 S. Ct. 200, 94 L. ed. 187; Brady v. Terminal R. Assn. 303 U. S. 10, 15, 58 S. Ct. 426, 429, 82 L. ed. 614, 618; Bocook v. Louisville & N. R. Co. (E. D. Ky.) 67 F. Supp. 154, 157, 158.

[3]Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 64, 67, 63 S. Ct. 444, 449, 451, 87 L. ed. 610, 616, 617, 143 A. L. R. 967.

[4]Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 67, 63 S. Ct. 444, 451, 87 L. ed. 610, 617, 143 A. L. R. 967.

any other cause is an absolute one from which the carrier cannot be excused by any showing of care however assiduous.[5]

■ Although the use by a common carrier of any equipment, such as a coupler, which breaks or otherwise fails is a violation of the Federal Safety Appliance Act which creates an absolute liability for damages, such absolute liability is clearly limited to the recovery of those damages which are *proximately caused,* in whole or in part, by such violation.[6] Damages are not proximately caused by a violation of the act if such violation does nothing more than create an incidental condition or situation which merely sets the stage for the operation of other forces which directly, and as independent factors, intervene and operate in an unbroken sequence to produce the injuries and the resulting damages.[7] No purpose will be served by a detailed discussion of the theory of proximate cause since that has been ably taken care of elsewhere.[8] Whether a particular act, or a failure to act, has, wholly or in part, proximately caused an accident depends in the last analysis on the application of common sense to the facts of each case.[9]

The distinction between a statutory violation which merely creates an incidental condition or situation—or shall we say merely creates the occasion for the operation of independent or intervening forces of causation—and a statutory violation which directly and proximately causes the accident is well illustrated by a comparison of the federal cases of Minneapolis & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. ed. 995, and Reetz v. Chicago & E. R. Co. (6 Cir.) 46 F. (2d) 50. The Gotschall case involved a brakeman who was walking along the tops of the cars and was thrown off and killed when a coupler of the moving train opened, resulting in a sudden application of the brakes. The failure of the coupler was an efficient and proximate cause of the accident and obviously did

---

[5]Brady v. Terminal R. Assn. *supra.*

[6]Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. ed. 284.

[7]See, Davis v. Wolfe, *supra.*

[8]See, Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821, 4 A. L. R. (2d) 143; 21 Minn. L. Rev. 19; Restatement, Torts, §§ 441 and 442.

[9]Moores v. N. P. Ry. Co. 108 Minn. 100, 121 N. W. 392.

more than merely create an incidental condition or occasion for the occurrence of the accident. In the Reetz case couplers broke, setting the brakes and stopping the train. When plaintiff was walking beside the train to locate the trouble, he fell off a bridge and received injuries from which he later died. The court held that the broken couplers created an incidental condition or situation but were not an efficient cause of or the instrumentality through which the injury was brought about.[10] It is not to be overlooked, however, that a statutory violation is not neutralized or superseded as a factor of direct and proximate cause by the acts of the employee when such acts are a normal reaction to the stimulus of a situation created by the defendant's wrong.[11]

■ In the instant case the rupture of the air hose, followed by the instant setting of the brakes and the breaking of the coupler, was not a direct and proximate cause of the accident. When the coupler had been repaired and it was discovered that the rear half of the train could not be moved since the brakes would not release, a new problem arose—that of warning the eastbound train in time to avoid a collision with the immobilized cars. Since it was no longer possible to carry out the order to pull the freight cars into the clear on the side track at North Hanover so that the eastbound train could proceed on the main line, the resulting emergency called for a new course of action—that of warning the approaching train before it entered the danger zone. The breaking of the air hose and the coupler undoubtedly created the incidental condition or situation which made it necessary to take such steps of warning to prevent a disaster.

There was ample time to proceed a relatively short distance down the track to set out torpedoes and flags, which would have brought

[10]For a further application of this principle, see St. Louis & S. F. R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. ed. 1290, and Lang v. N. Y. Cent. R. Co. 255 U. S. 455, 41 S. Ct. 381, 65 L. ed. 729.

[11]Anderson v. Baltimore & O. R. Co. (2 Cir.) 89 F. (2d) 629, 631; N. Y. Cent. R. Co. v. Brown (6 Cir.) 63 F. (2d) 657, 658; Somogyi v. Cincinnati, N. O. & T. P. Ry. Co. (6 Cir.) 101 F. (2d) 480; Restatement, Torts, § 443.

the eastbound train to a timely stop. Instead, the conductor elected to uncouple the locomotive and proceed toward North Hanover. There was ample time and opportunity at the intermediate stations of Woodbine and Elizabeth, or at almost any point along the single track, to stop and give an effective warning by setting out torpedoes and flags. Even after leaving Elizabeth there was sufficient time to place the necessary warning signals, but instead, with only three minutes left, the locomotive and its crew plunged on to North Hanover into the face of mortal danger, in the hope that a gamble on split-second timing would carry them to safety and would avoid the delay that would have been caused had they exercised ordinary prudence by taking time to set out torpedoes and flags. It is true that the broken coupler provided the situation or occasion for the subsequent reckless conduct which led to the collision, but it was not the proximate cause of either the conduct or the collision.

As a matter of common sense, the breaking of the coupler cannot be regarded as a substantial and actual factor in bringing about, or even in explaining, the train crew's failure to use ordinary prudence. Although it is true that the collision would not have occurred *but for* the broken coupler, it is not to be overlooked that an act of negligence, or as here an act of statutory violation, which creates an absolute liability is not a direct and proximate cause of a plaintiff's harm simply because the harm would not have occurred *but for* such act unless the act is a substantial as well as an actual factor in bringing about such harm. See, Restatement, Torts, § 431, *comment a.* But for the initial appearance of man on this planet the collision would not have occurred, but that fact alone cannot place any direct causal responsibility upon Adam. The element of *but for*, when standing by itself, is not a link in the chain of direct and proximate causation and has been rejected by the federal courts as a factor of proximate causation.[12] Directed verdicts are rare today

---

[12]See, Chicago, St. P. M. & O. R. Co. v. Arnold (8 Cir.) 160 F. (2d) 1002, 1007, wherein the *but for* doctrine is rejected and Restatement, Torts, § 431, *comment a,* is cited with approval; Cusson v. Canadian Pac. Ry. Co. (2 Cir.) 115 F. (2d) 430, 432.

in actions under the Federal Employers' Liability Act,[13] neverthe-less, a careful reading of the federal decisions in this field, with a due regard for their controlling facts, fails to disclose any acceptance of or reliance upon the *but for* doctrine.[14]

■ Despite the conclusion that the breaking of the coupler as a violation of the Federal Safety Appliance Act was not a proximate contributory cause of the collision, the question remains whether under the Federal Employers' Liability Act (53 Stat. 1404, 45 USCA, § 51) the alleged negligence of the conductor in ordering the plaintiff to keep going to North Hanover proximately contributed *in part* to the collision or whether the negligence of the plaintiff as engineer was the sole cause. The conductor was in charge of the train. The evidence reasonably sustains a finding that he repeatedly urged the plaintiff, when the latter wished to stop to set out torpedoes and flags, to "keep going" to North Hanover. The trial court, in its memorandum which was made a part of the order appealed from, pointed out that plaintiff knew his train had to be in North Hanover by 8:20 a. m. in order to permit the eastbound train to pass and further knew that if North Hanover was not reached by 8:20 a. m. it would be necessary to provide flag protection. Plaintiff was sub-ject to defendant's operating rule No. 881, relating to locomotive engineers, which provides:

"They are under the direction of the conductor as regards the management of trains, *but will not obey any instructions that may endanger the safety of the train or require violation of rules.*" (Italics supplied.)

The trial court in directing a verdict concluded that under the evidence plaintiff, as engineer, flagrantly and unnecessarily violated the above rule and that such violation was an intervening force which superseded defendant's negligence and was the sole proximate cause of the accident.

[13]Keith v. Wheeling & L. E. Ry. Co. (6 Cir.) 160 F. (2d) 654, 658.

[14]The decision of Givens v. Missouri-K.-T. R. Co. (5 Cir.) 195 F. (2d) 225 (as well as other decisions cited by appellant) shows no reliance upon or acceptance of the *but for* theory.

Can it be said that the jury under the evidence could not reasonably find that the conductor's order to proceed was at least *in part* a proximate cause of the accident? In view of the obvious danger in going beyond Elizabeth when only three minutes remained to travel the three miles to North Hanover, the jury clearly could find that the conductor was negligent and that such negligence contributed proximately to the accident. But what was the effect of plaintiff's violation of operating rule No. 881 which provided that although he was under the direction of the conductor he should not obey an instruction that might endanger the safety of the train or require a violation of rules?

In Miller v. Central R. Co. (2 Cir.) 58 F. (2d) 635, a similar situation was presented. The conductor of a "work extra" train ordered the engineer to enter and run upon the main line without first obtaining a clearance or running order. The engineer obeyed him, though both were aware of the danger involved. In a collision with a freight train the engineer was killed. The railroad had a rule similar to the one in this case to the effect that the engineer was to obey the conductor unless to do so would endanger the safety of the train or involve a violation of the rules. Mr. Justice Learned Hand held that the order of the conductor might be considered a fault which contributed to the collision and that such order properly created issues for the jury on negligence and proximate cause, not merely because running orders had not been received, but because of the danger involved in entering the right of way knowing that another train used that track every day—though not at any certain time. In choosing to obey the conductor's order, the engineer knowingly violated the general cautionary rule that he should not do so if it endangered the safety of the train or required a violation of rules. The court held that any negligence of the engineer in obeying the conductor, when no running order permitted travel on the main line, was merely contributory negligence which operated only to reduce the damages and was not a bar to the action. This latter holding is obviously consistent with 35 Stat. 66, 45 USCA, § 53; nevertheless, Mr. Justice Learned Hand found it necessary to explain that the rule violated

by the engineer was not one *prescribing specific conduct* but only of *a general cautionary nature.* This explanation, aside from clarifying the earlier decision of Paster v. Pennsylvania R. R. (2 Cir.) 43 F. (2d) 908, served two purposes; namely, first to point out that carriers cannot restore contributory negligence as a defense by merely enacting general admonitions of care as rules, and secondly, to recognize that an employee's disobedience of rules prescribing specific conduct, *unlike disobedience of rules of a general cautionary nature,* may be a bar to plaintiff's action although such disobedience does not constitute a defense as contributory negligence.

In the more recent decision of Van Derveer v. Delaware, L. & W. R. Co. (2 Cir.) 84 F. (2d) 979, Mr. Justice Hand suggested that further limitations might be applicable to the theory that violation of a rule of specific conduct was a bar. In Gildner v. Baltimore & O. R. Co. (2 Cir.) 90 F. (2d) 635, he again emphasized that a violation of a general cautionary regulation is not a bar to an action and that, under all United States Supreme Court decisions, such a grave consequence (as distinguished from a mere diminution in damages by reason of contributory negligence) attaches only to violations of orders or rules prescribing specific conduct.

The Miller, Van Derveer, and Gildner cases which were based largely on Frese v. Chicago, B. & Q. R. Co. 263 U. S. 1, 44 S. Ct. 1, 68 L. ed. 131, and Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. ed. 224, were all decided prior to the abolition of the assumption of risk as a defense by the 1939 amendment of the Federal Employers' Liability Act (53 Stat. 1404, 45 USCA, § 54). This amendment simply provided that in an action brought by an employee he "shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part *from the negligence of any of the officers, agents, or employees of such carrier; * * *."* (Italics supplied.) Although the employee was left subject to the assumption of employment risks *which were not at least in part proximately caused by the negligence of the carrier or its other agents and employees,* it is clear that under the 1939 amendment, once the negligence of the carrier is established

as a contributing cause, the carrier cannot be relieved of liability by pleading that the employee "assumed the risk."[15]

Although the 1939 amendment did not change the rule of Miller v. Central R. Co. (2 Cir.) 58 F. (2d) 635, that an employee's violation of a rule of a general cautionary nature is not a bar to his action, decisions subsequent to such amendment make it somewhat doubtful whether even the violation of a rule or order prescribing specific conduct remains as a bar to the employee's action.[16] Since in the instant case the breaking of the train coupler and the freezing of the brakes on the rear half of the train made it impossible to carry out the specific order to pull the freight train into the clear on the side track at North Hanover, we are here not concerned with any order or rule prescribing specific conduct. The emergency resulting from the impossibility of moving the train called for a new course of action, namely, action to warn the approaching train before it entered the danger zone. In pursuing such new course of action, the plaintiff—as engineer—in violating the rule that he should not

---

[15] See concurring opinion of Mr. Justice Frankfurter in Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 63 S. Ct. 444, 87 L. ed. 610, 143 A. L. R. 967.

[16] It is by no means clear on what basis the courts, prior to the 1939 amendment, held a violation of a specific conduct rule to be a bar, but apparently some courts proceed on the theory that such a violation amounted to an assumption of risk. See dicta in Tiller v. Atlantic Coast Line R. Co. supra. It has been suggested that a violation of a specific conduct rule involves more than an assumption of risk since it concerns a violation of a duty specifically and consciously assumed as a condition of becoming employed. See, Walker v. Lykes Bros. S. S. Co. Inc. (2 Cir.) 193 F. (2d) 772. In Hampton v. Wabash R. Co. 356 Mo. 999, 204 S. W. (2d) 708, certiorari denied, 333 U. S. 833, 68 S. Ct. 460, 92 L. ed. 1117, the Missouri court specifically held that where an employee's violation of an order prescribing specific conduct contributes proximately to the injury but is not the sole proximate cause thereof, such violation is not a bar to the action but may be considered in mitigation of damages. This specific issue was ably raised in the application for certiorari to the United States Supreme Court, nevertheless, as above noted, certiorari was denied. See, Keith v. Wheeling & L. E. Ry. Co. (6 Cir.) 160 F. (2d) 654; Chicago, St. P. M. & O. R. Co. v. Arnold (8 Cir.) 160 F. (2d) 1002; Henwood v. Coburn (8 Cir.) 165 F. (2d) 418.

obey the conductor if to do so would endanger the safety of the train or require a breach of rules, violated only a general cautionary regulation; and the jury could reasonably find that, in the light of the conductor's conduct, the engineer's violation was not the sole proximate cause of the collision. In other words, it was for the jury to determine whether the conductor's order to proceed was negligence which contributed proximately to the collision.

The order of the trial court is reversed and a new trial is granted.

Reversed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

---

[1]Reported in 64 N. W. (2d) 366.