## LESLIE J. KENNEY v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1, 2]

July 15, 1955.

No. 36,563.

*Grannis & Grannis,* for appellant.

*Donald A. Chapman, Robert M. Austin,* and *Paul F. Clements,* for respondent.

[1]Reported in 71 N. W. (2d) 669.

[2]Certiorari denied, 350 U. S. 903, 76 S. Ct. 182, 100 L. ed. ——.

CHRISTIANSON, JUSTICE.

This is an action under the Federal Employers' Liability Act (35 Stat. 65, as amended by 36 Stat. 291, and 53 Stat. 1404, 45 USCA, § 51, *et seq.*) to recover for personal injuries allegedly sustained by plaintiff as a result of negligence on the part of defendant's agents and employees. The jury returned a verdict for plaintiff for $27,500, and defendant appeals from the judgment entered following the trial court's denial of its alternative motion for judgment notwithstanding the verdict or for a new trial.

Because of the limited scope of the questions raised on appeal we shall set out only those facts necessary to the decision.[3] Plaintiff was employed by defendant corporation at the time of his injury. On June 2, 1951, plaintiff was working as a brakeman on a freight train which was proceeding at 25 miles per hour. Perceiving that a head-on collision with another train was imminent, plaintiff descended the ladder on the left side of the first unit and prepared to jump to the ground. When there was approximately 50 feet between the two trains, plaintiff dropped to the ground in the accepted manner for trainmen by putting his right foot near the ground and then letting go of the handrail on the ladder. His right foot struck the ground and then his left. Plaintiff testified that he landed on his heels and received a severe shock accompanied by sharp pain which traveled up his legs and into his back. When both of his feet were on the ground, plaintiff leaned backward to maintain his balance and took short and fast steps in order to check his speed. Plaintiff never lost his balance or fell to the ground.

Plaintiff alleges that the shock incurred upon alighting from the train caused a severe paravertebral lumbar contusion and strain which involved soft tissues such as ligaments and muscles about the lumbar spine and deformation of the first and third lumbar vertebrae through compression fractures which resulted in a traumatic flexion type of injury giving a wedge-shaped appearance to the anterior side of the vertebrae by flattening of the front part. The injury will be a source of constant pain to plaintiff and he is restricted in

---

[3]A complete set of facts may be found in Johnson v. Chicago G. W. Ry. Co. 242 Minn. 130, 64 N. W. (2d) 372, which arose out of the same accident.

his forward bending by 50 percent, sideways bending by 50 percent, and backward bending by 100 percent. Plaintiff is permanently and totally disabled from performing the work of a railroad brakeman. At the time of the accident he had a life expectancy of 22.65 years and was earning approximately $4,600 per year. His work experience is limited to railroading and truck driving and he has only a high school education. Following the accident, plaintiff has been able to till 120 acres of his 170-acre farm with a tenant farmer, and since March 1, 1952, he has operated the entire farm with some aid. During 1953 his income from the farm was $1,700 and in 1952 he lost $80. While performing the farm work plaintiff is subjected to sharp pain from this back condition and during his waking hours he must wear a corset-type, canvas belt enclosing pliable metal supports which starts at the middle of the buttocks and extends to a point several inches below the arms in the front and back. Plaintiff's sleep is interrupted by pain approximately two or three times per night. In the future plaintiff's condition will not improve and effective relief from the pain is not possible.

■ Defendant contends that the medical opinion of plaintiff's medical witness Dr. Leonard Titrud to the effect that the drop to the ground from the moving train and the resulting shock which traveled into plaintiff's back caused plaintiff's present back condition was conjectural, speculative, and lacked proper foundation. Since he did not examine plaintiff immediately following the accident, Dr. Titrud's opinion was based upon a hypothetical question which defendant contends furnished an improper foundation for the expert opinion since it omitted the allegedly essential fact that plaintiff was upright and bending backward upon alighting. According to defendant's medical experts plaintiff would have had to be in a flexion or forward flexed position when his feet touched the ground in order for him to have sustained a compression fracture of the anterior side of his lumbar vertebrae.

Plaintiff's testimony on direct examination regarding the sequence of his positions upon alighting from the train consisted of the following statements:

"I put my one foot down close to the ground—as close as I could, and then I let go and lit on the back of my heels and leaned back to keep my balance; and when I lit on my heels, I got a severe shock at that speed that went up through my legs and body, and it was a sharp pain; * * *."

On cross-examination plaintiff testified:

"Q. When you struck the ground after both of your feet had touched the ground, you straightened up and leaned back so that you wouldn't be pitched by the force of the movement of the train headfirst.

"A. I didn't straighten up.

"Q. Didn't you lean back?

"A. I leaned back, and then by straightening up you keep your balance."

In the foregoing testimony plaintiff's position while in the air and immediately upon the touching of his heels to the ground is not disclosed. The testimony establishes, if anything, that plaintiff did not lean back until after his feet touched the ground and he had already received the shock which allegedly injured his spine. Moreover, except for the speculative opinion of one of defendant's medical experts,[4] there is no direct testimony in the record establishing the position of plaintiff's spine as his heels struck the ground.

Ordinarily determination of whether there is a sufficient foundation for the opinion of an expert rests within the sound judicial discretion of the trial judge. Where a hypothetical question is used, it must embody substantially all the facts relating to the subject matter.[5] As this court stated in Wittenberg v. Onsgard, 78 Minn. 342, 347, 81 N. W. 14, 15, 47 L. R. A. 141:

[4]Dr. John H. Moe, a witness for the defendant, testified that, based on *his* interpretation of the mechanism of getting off a train, plaintiff would have been erect or, if anything, a little bent backward. However, this opinion was not correlated with plaintiff's actual movements upon jumping from the train.

[5]Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015.

"* * * All hypothetical questions must be based upon facts admitted or established, or which, if controverted, might legitimately be found by the jury from the evidence. Such a question should embody substantially all the facts relating to the subject upon which the opinion of the witness is asked, since the opinion of the witness is worthless, and may be misleading, if given on a state of facts that does not exist, or upon an incomplete statement of the facts bearing upon the subject upon which the opinion of the witness is asked."

The hypothetical question in the instant case was based upon Dr. Titrud's four physical examinations of plaintiff over a 20-month period as well as his study of the X rays, and it included all the evidence introduced regarding the manner in which plaintiff dismounted from the train but omitted any suggestion as to plaintiff's position while in the air and when his heels first struck the ground. However, the controlling question before us is not whether Dr. Titrud could properly render the opinion he did as to the cause of plaintiff's condition without assuming that plaintiff was in a forward flexion position when he first struck the ground—a material fact which at most is only supported by inference from the physical facts and plaintiff's subjective complaints[6]—but whether, on the basis of the record presented, defendant is in a position to question the sufficiency of the foundation for his opinion on appeal.

The position of plaintiff's spine when he first struck the ground was perhaps unknown or unknowable to him under the stress of jumping from a train proceeding at a rate of approximately 25 miles per hour in the face of the impending head-on collision. Hence, evidence regarding whether the shock plaintiff received when his heels struck the ground caused the compression fracture of his lumbar vertebrae was left almost wholly up to medical testimony and, bar-

---

[6] A hypothetical question which assumes a material fact not in evidence is uniformly held to be properly excludable. See, e.g., Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 181, 46 N. W. (2d) 243, 249.

ring conflicts in the facts or the inferences to be drawn therefrom, the opinion of the medical experts would be conclusive upon the jury.[7]

Although defendant objected to the hypothetical question first put to Dr. Titrud on the ground that it failed to include certain facts, which plaintiff's counsel thereafter supplied, defendant did not object thereto or move to strike his opinion testimony upon the ground that it assumed that plaintiff was in a forward flexion position when he struck the ground. In fact, no objection was ever raised to Dr. Titrud's opinion testimony upon this ground until defendant's motion for new trial. Such being the case, defendant is no longer in a position to question the admissibility of his testimony on grounds not asserted at the trial because of the elementary, but practical, principle that a party should not be able to assure himself of a new trial by allowing the trial court to commit error in the admission of evidence without appropriate objection[8] and the corollary rule that, where no motion is made to strike out an answer to a proper question, the propriety of the answer will not be reviewed on appeal. Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525. While this rule is not applicable where proper objection to the introduction of improper evidence is made before such evidence is received,[9] the ground now asserted by defendant was not raised by its objections at the trial and it is therefore precluded from raising the question on appeal. Cf. Hartmon v. National Heater Co. 240 Minn. 264, 275, 60 N. W. (2d) 804, 812. Furthermore, even if it be assumed for purposes of argument that Dr. Titrud's opinion testimony should have been excluded if appropriate objection had been made and no further foundation laid, the record discloses that defendant without first making appropriate objection went into the matter fully on cross-examination and thereby waived any right to have such opinion testimony stricken. Cf. Brown v. Morrill, 45 Minn. 483, 48 N. W. 328;

[7]See, 7 Dunnell, Dig. (3 ed.) § 3334.

[8]See, Mason's Dunnell, Minn. Pract. §§ 3206, 3217; 6 Dunnell, Dig. & Supp. §§ 9728, 9739.

[9]See, Madson v. Christenson, 128 Minn. 17, 23, 150 N. W. 213, 215, L. R. A. 1916C, 1214.

Barnes v. Christofferson, 62 Minn. 318, 64 N. W. 821; Parris v. McKay, 165 Minn. 241, 206 N. W. 393.

We therefore conclude that there is no basis in the record for defendant's contention that there should be a new trial because of the admission of Dr. Titrud's opinion testimony.

■ Defendant also contends that the verdict establishing that plaintiff's injuries were caused by defendant's negligence is not supported by the evidence. Ordinarily a finding of proximate cause is reserved to the jury. As we recently stated in Berg v. Ullevig, 244 Minn. 390, 398, 70 N. W. (2d) 133, 138:

"* * * The test, of course, is not whether the trauma resulting from another's negligence might, only in the realm of possibility, have been a factor in producing a certain result, but whether it was a factor or at least a probable factor in producing the claimed result."

In this case where the question of causation was dependent upon medical opinion testimony the jury was presented with a conflict between the opinion of Dr. Titrud that the shock received upon dropping from the train did cause a compression fracture to plaintiff's lumbar vertebrae and that of defendant's experts to the effect that the injury was not due to the drop from the train but, among other things, postural change caused by improper weight bearing which resulted from a fracture of his hip in 1934. Although defendant has shown other possible causes for the condition of plaintiff's back, plaintiff has introduced competent evidence that the traumatic force occurring when plaintiff's heels touched the ground was not merely a possible causal factor of the condition but that it was the causal factor which produced a compression fracture of the lumbar vertebrae in plaintiff's back. Moreover, in light of the permissible inference arising from the testimony of plaintiff that he received a severe shock accompanied by sharp pain which traveled up his legs and into his back when alighting from the moving train and the fact that plaintiff has been physically incapacitated from working as a railroad brakeman since the accident, the jury could have found that plaintiff was in a flexion position when his heels touched the ground

and thereby resolved the conflict in the opinion testimony of the medical experts. In view of the foregoing we cannot say as a matter of law that plaintiff's injuries were not caused by the shock resulting when his heels struck the ground. Hence we find no merit in defendant's contention that there is no evidence to support the jury's verdict or that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict.

■ Defendant also contends that the verdict is excessive and not justified by the evidence. In Hallada v. G. N. Ry. Co. 244 Minn. 81, 97, 69 N. W. (2d) 673, 686, we said:

"* * * The reasonableness of an award for damages can be appraised only in the light of the elementary principle that plaintiff should be given neither more nor less than a sum which leaves him financially *whole* to the same extent as he would have been had no injury occurred."

Viewing the evidence in the light most favorable to the verdict, as we must, the jury could find that plaintiff suffered a compression fracture of the first and third lumbar vertebrae of his back in the accident on June 2, 1951. At this time plaintiff was 44 years old and had a life expectancy of 22.65 years. He was earning approximately $4,600 per year as a railroad brakeman, but as a result of the accident he is totally and permanently physically disabled from returning to his work as a brakeman. The extent of plaintiff's injuries is evidenced by his testimony of constant pain and discomfort and competent medical testimony to the effect that he has a present bending restriction of 50 percent in forward movement, 50 percent in sideways movement, and 100 percent in backward movement. Plaintiff must wear a canvas belt for support during his waking hours which is ribbed with pliable metal, and he will be subject to unrelievable pain from his back. Since his accident plaintiff has been able to earn only $1,700 from his farm during 1953 while in 1952 he lost $80.

In view of the foregoing facts we cannot say that the verdict for $27,500 is excessive under the circumstances presented. It follows

that the trial court did not err in denying defendant's motion for a new trial.

Judgment affirmed.