STATE of Minnesota, Respondent,

v.

Oscar Christopher SCHAEFFER, Appellant.

No. C9-89-1109.

Court of Appeals of Minnesota.

March 20, 1990.

Review Granted May 11, 1990.

his polygraph test into evidence; and (2) admitted his coerced confession into evidence. We find that the admission of his confession was proper, but based on the improper admission of the fact that appellant had taken and failed a polygraph test, we reverse and remand for a new trial.

## FACTS

On April 21, 1988, M.K., the daughter of appellant's girlfriend, informed the Kandiyohi County Sheriff's Department that appellant sexually assaulted her several times between 1985 and 1987 while appellant resided with M.K. and her mother. M.K. reported that the sexual abuse occurred while her mother was out of the home. The assaults took place while M.K. was between 11 and 13 years old.

Wayne Friedrich, an investigator for the Kandiyohi County Sheriff's Department, interviewed appellant on April 28, 1988. Appellant denied M.K.'s allegations and agreed to take a polygraph test.

On May 4, 1988, appellant voluntarily submitted to a polygraph test. David Erickson, Appleton Police Chief and a trained polygraph operator, conducted the polygraph test at the Kandiyohi County Sheriff's Department. Before administering the test, Erickson read appellant a form entitled "Polygraph Examination, Consent to Be Interviewed By Polygraph." Appellant signed the form. Appellant was apprised of the fact that he did not have to take the polygraph test. Erickson also informed appellant of his constitutional rights before asking any questions. Appellant said that he understood his rights, and agreed to take the test.

After the polygraph test, Erickson told appellant the test results indicated that he had been lying, and stated that he wanted to question appellant some more. After being advised by Erickson that, according to Erickson, the polygraph revealed that appellant had been lying, appellant admitted that some of M.K.'s allegations were true. Erickson then brought Friedrich into the room. After giving a *Miranda* warn-

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Michael Lynch, Kandiyohi County Atty., Willmar, for respondent.

John M. Stuart, State Public Defender, Melissa Sheridan, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and SCHUMACHER and SCHULTZ *, JJ.

## OPINION

RANDALL, Judge.

Appellant Oscar Christopher Schaeffer was convicted of first degree criminal sexual conduct by a jury in Kandiyohi County District Court. Appellant claims he was deprived of his right to a fair trial because the trial court: (1) admitted the results of

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ing, Friedrich interviewed appellant and obtained incriminating statements which were used as evidence at appellant's trial.

Appellant admitted that he had sexual intercourse with M.K. on three occasions between the summer of 1986 and the summer of 1987. He also admitted that on several occasions he had oral sex with M.K.

Appellant was charged in Kandiyohi County District Court with one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(g) (1988) and one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(h)(v) (1988). The second count was dismissed because the statute of limitations had expired.

At the Omnibus hearing, appellant's attorney moved to suppress the confession obtained from his client after the poly-graph test had been administered. The trial judge denied the motion to suppress and ruled that the confession was admissible.

Before trial, and in camera, appellant's attorney asked the court for permission to elicit testimony from Erickson about the circumstances surrounding the taking of the polygraph test, and the subsequent confession. Appellant's attorney expressed a desire for this unusual request, i.e. bringing the fact of a polygraph test to the attention of a jury, on the theory that even though the confession had previously been ruled admissible, the circumstances under which it was obtained could be used to undermine its credibility and lower any weight the jury would give it. The trial judge agreed to allow appellant's attorney to question Erickson about the fact of a polygraph test having been taken by appellant. The trial court did state that although the fact that a polygraph test had been taken would come in, neither party could inquire about the "results" of the test.

During cross-examination, appellant's attorney asked Erickson the following questions concerning the polygraph test:

Q. Officer, you are a polygraph operator; is that correct?

A. That's correct.

Q. Prior to the interview that Officer Friedrich conducted and that we've just been talking about, you ran a polygraph interview on the defendant, is that not correct?

A. I did.

\* \* \* \* \* \*

Q. Now, after you completed this interview, you yourself talked to Mr. Schaeffer; is that correct?

A. That's correct.

Q. And you informed Mr. Schaeffer that, in your opinion, he had been lying on the polygraph; is that correct?

A. That's correct.

Q. And, in fact, one of your purposes in so doing was to attempt to obtain a statement from him which you thought might more nearly reflect what you were looking for; is that correct?

A. Would you repeat the question?

Q. That's a little complex. I'll try to break it down. The reason, one of the reasons you told Mr. Schaeffer that you thought he'd been lying on the polygraph was to try to extract a confession from him; is that not correct?

A. That would be incorrect.

Q. I see. You were just telling it to him to pass the time of day; is that correct?

A. That wouldn't be correct either.

Q. Well, if you weren't attempting to obtain a further statement from him—or were you trying to obtain a further statement from him after the polygraph?

A. I advised Mr. Schaeffer that he did not pass the exam because I didn't feel he had, and then I went in and interviewed.

\* \* \* \* \* \*

The jury convicted appellant of criminal sexual conduct in the first degree. Appellant was sentenced to 43 months. He appeals on the issue of his confession and the

fact that evidence of his polygraph test got to the jury.

## ISSUES

1. Did the trial court commit reversible error when it allowed into evidence testimony concerning appellant's polygraph test?

2. Did the trial court err by refusing to suppress appellant's confession?

## ANALYSIS

### I.

*Polygraph Test*

■■■ Appellant contends that the trial court's decision to permit the jury to hear testimony about the polygraph test and its results constitutes reversible error. Trial courts have "broad discretion to make evidentiary rulings." *State v. Larson,* 389 N.W.2d 872, 874 (Minn.1986). Absent clear abuse of discretion, a trial court's ruling on an evidentiary matter will not be disturbed. *State v. Jones,* 347 N.W.2d 796, 802 (Minn. 1984).

■■■ A trial court does not, however, have discretion to depart from established rules of evidence, *not even at the request of a party.* Both the supreme court and this court have consistently held:

> [T]he results of polygraph tests as well as any direct or indirect references to the taking of or refusal to take such a test are inadmissible.

*State v. Fenney,* 448 N.W.2d 54, 61 (Minn. 1989); *see also State v. Anderson,* 379 N.W.2d 70, 79 (Minn.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986); *State v. Saxton,* 331 N.W.2d 240, 242 (Minn.1983); *State v. Michaeloff,* 324 N.W.2d 926, 927 (Minn.1982); *State v. Lee,* 266 N.W.2d 181, 182 (Minn.1978); *State v. Wakefield,* 263 N.W.2d 76, 77 (Minn.1978); *State v. Hill,* 312 Minn. 514, 525, 253 N.W.2d 378, 385 (1977); *State v. Goblirsch,* 309 Minn. 401, 407, 246 N.W.2d 12, 15 (1976); *State v. Perry,* 274 Minn. 1, 12–13, 142 N.W.2d 573; 580 (1966); *State v. Torkelson,* 404 N.W.2d 352, 357 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. June 25, 1987); *State v. Litzau,* 377 N.W.2d 53,

54–56 (Minn.Ct.App.1985); *State v. Sullivan,* 360 N.W.2d 418, 422 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. April 12, 1985); *State v. Jahnke,* 353 N.W.2d 606, 610 (Minn.Ct.App.1984).

Polygraph test results are not admitted because insufficient evidence exists confirming the reliability of the tests. *See Michaeloff,* 324 N.W.2d at 927; *Perry,* 274 Minn. at 12, 142 N.W.2d at 580. Additionally, references to the taking or refusal to take such a test are excluded due to the prejudicial impact such evidence could have on a jury. *Perry,* 274 Minn. at 13, 142 N.W.2d at 580 (quoting *State v. Kolander,* 236 Minn. 209, 221, 52 N.W.2d 458, 465 (1952)). The prohibition against mentioning just the fact that a defendant took a polygraph test, let alone the results, is so strong that attempts by defendants to have convictions overturned based on a trial court's refusal to admit *favorable* polygraph evidence to support a claim of innocence have consistently met with failure. *See Anderson,* 379 N.W.2d at 79; *Michaeloff,* 324 N.W.2d at 927; *Lee,* 266 N.W.2d at 182; *Wakefield,* 263 N.W.2d at 77; *Hill,* 312 Minn. at 525, 253 N.W.2d at 385; *Goblirsch,* 309 Minn. at 407, 246 N.W.2d at 12; *Torkelson,* 404 N.W.2d at 357; *Sullivan,* 360 N.W.2d at 422.

Minnesota appellate courts have uniformly reversed convictions when evidence of a defendant's taking of or refusal to take a polygraph test is presented to a jury. *Perry,* 274 Minn. at 12–13, 142 N.W.2d at 580 (conviction reversed after prosecutor called attention to fact that defendant submitted to polygraph exam); *Kolander,* 236 Minn. at 221–22, 52 N.W.2d at 465–66 (conviction reversed following admission of evidence that defendant refused test); *Litzau,* 377 N.W.2d at 55 (conviction reversed although results of polygraph test were admitted based on parties' stipulation); *Jahnke,* 353 N.W.2d at 610 (prosecutor's question on cross-examination concerning prior refusal to take polygraph test held tantamount to prejudicial misconduct).

We find *Litzau* especially instructive. In *Litzau,* a criminal defendant agreed to take a polygraph test prior to trial, and

stipulated that, if he failed the test, the results would be admissible at trial. The defendant failed the test and the state introduced this evidence at trial based on the stipulation. The defendant did not object to this evidence and was convicted. This court reversed the conviction based on the admission of the polygraph evidence, stating: "Minnesota courts may not admit polygraph evidence under *any circumstances.*" *Litzau*, 377 N.W.2d at 55 (emphasis added).

■ The dissent emphasizes that the polygraph evidence here was introduced by the defense rather than the prosecution and points to the general rule that the failure to object to the inadmissible evidence constitutes a waiver of any objection. Ordinarily, this argument would be persuasive. However, while certain inadmissible evidence, such as hearsay, generally requires a timely objection to be excluded, polygraph evidence is inadmissible per se and no objection is necessary. *See Litzau*, 377 N.W.2d at 55. Further, we are not persuaded by the dissent's claim that the prejudicial impact of the evidence was mitigated by the trial court's cautionary instruction. *See Perry*, 274 Minn. at 10, 12–13, 142 N.W.2d at 578–80 (conviction reversed despite cautionary instruction).

■ We appreciate the anomaly of seeming to reverse a conviction because the defendant "opened the door." But, the classic opening the door argument,[1] wherein a party runs the risk of having otherwise inadmissible evidence brought to the jury's attention because that party first introduced it, is inapplicable here. Although it is true appellant's counsel first made the suggestion that it come into evidence for purposes of impeaching the confession, the trial court had the right and the legal obligation to resist any attempt, by either party, to introduce evidence about the taking of the polygraph test. The trial court had no obligation under any "fair trial theory" to grant defendant's motion to introduce evidence about the polygraph. This situation is no different than any other when a party wants to introduce inadmissible evidence merely because that party feels it might be favorable. Trial judges routinely deny such motions. In a criminal case, a defendant has every right to produce evidence to support the defendant's theory of the case, but this constitutional right to defend oneself is still subject to the rules of evidence. For instance, unreliable hearsay, not covered by one of the hearsay exceptions, is no more admissible when a defendant offers it than it is when the prosecution does.

The trial court had a duty to keep evidence of appellant's polygraph test out of the trial. It is not significant for purposes of our analysis that appellant made the motion, and not the prosecutor. The trial court should have denied appellant's motion. Granting permission to either party to inform the jury that appellant had taken a polygraph test was reversible error.

We acknowledge that the trial court was placed in a difficult position by defense counsel's request to introduce testimony about the polygraph examination because defense counsel felt that testimony might cast doubt on the reliability of the otherwise admissible confession. However, trial courts are bound by the rules of evidence. By departing from established precedent and permitting the jury to hear testimony concerning the appellant's polygraph test, the trial court erred. Further, we cannot find this error harmless beyond a reasonable doubt.

Relative to the weight of this error, we find *Fenney* instructive. In *Fenney*, the supreme court held that a Bureau of Criminal Apprehension Agent's mere reference

---

1. This is not a situation where the defense attorney, without prior notice and without permission from the court, blurted out on cross-examination the fact that the defendant had taken a polygraph test. That would be the traditional "opening the door" situation wherein a defendant might well be denied a new trial if his only theory was that the jury was told he had taken a polygraph test. We do not have that fact situation. Here, the trial court knew about defense counsel's intentions, had the opportunity to keep the offending evidence out, and did not. The defense attorney only requested permission to introduce improper evidence, the trial court made the decision to let it in.

to his prior experience [2] administering polygraph examinations in general was clear error, but in that limited fact situation did not amount to reversible error. In *Fenney*, the agent's prior work experience with polygraph exams had no relationship to the defendant on trial. Thus, it is noteworthy that the *Fenney* court, even on the collateral and innocuous reference by a witness that he had previously, among other things, administered polygraph tests, found that statement offensive, immaterial, and its admission just plain wrong. *Fenney* reiterated the longstanding Minnesota rule that polygraph test results and any direct or indirect references to the taking or refusal to take such a test are inadmissible. *Fenney*, 448 N.W.2d at 61. The *Fenney* court stated "[b]oth the polygraph testimony and demeanor testimony were wrongly admitted." *Id.* The supreme court stated that Fenney's reaction upon being told that he had been charged with murder

> had no real probative value and the potential for unfair prejudice was high, particularly in light of the impermissible bolstering of Agent Luttring's testimony by reference to his experience administering polygraph tests.

*Id.* 448 N.W.2d at 61–62. The court went on to say, "[a]lthough wrongly admitted, under the facts of this case the error was not reversible error." *Id.*

Thus, even though it was found not to be reversible error because it was a passing remark on a collateral matter (agent's work experience), the *Fenney* court went out of its way to state four different times that just this much of a reference was error. If we add to the *Fenney* facts the scenerio that Agent Luttring had actually administered a polygraph test to Fenney, testified to the jury that he had done so, and that Fenney failed the test, only naivete promoted to an art form would permit an inference other than that the supreme court would have found it reversible error and granted Fenney a new trial.

Here, Officer Erickson *testified that appellant submitted to a polygraph exam and failed.* We are obligated to find that even though the request to admit the polygraph evidence came from appellant, the trial court improperly granted the request. We also find the error was not harmless beyond a reasonable doubt, but rather was prejudicial and noncurable. *See Perry,* 274 Minn. at 13, 142 N.W.2d at 580; *Kolander,* 236 Minn. at 221–22, 52 N.W.2d at 465; *Litzau,* 377 N.W.2d at 55; *Jahnke,* 353 N.W.2d at 610.

## II.

### Confession

■ Appellant's next contention is that, in addition to the fact that he had taken a polygraph test, admission of his confession was improper because it was coerced by improper police tactics. Appellant argues that his confession was involuntary because the polygraph operator told appellant that his test results showed he was lying, and he was never told that the polygraph test results could not be used in court.

To determine whether a confession is voluntary, we examine the totality of the circumstances. *State v. Merrill,* 274 N.W.2d 99, 106 (Minn.1978). The supreme court has found a defendant's confession following a polygraph test voluntary even though police told the defendant that the test indicated he was lying. *State v. Jungbauer,* 348 N.W.2d 344 (Minn.1984). The court stated that as long as police do not "misrepresent the reliability of the test or falsely imply that the results will be admissible in evidence," the use of polygraph testing during interrogation does not, standing alone, make a subsequent confession involuntary. *Id.* at 346. The United States Supreme Court has similarly ruled that the use of polygraph test results while questioning the accused is not inherently coercive and does not necessarily render a response involuntary. *See Wyrick v.*

---

**2.** At the time, the agent was discussing the various things he had done as part of his previous work background for purposes of being qualified as an expert so that he could give opinion testimony as to Fenney's reaction when being accused of murder. There is no reference in the BCA agent's testimony that Fenney himself had been given a polygraph, much less a statement, as we have in this case, that appellant had taken one and failed.

*Fields,* 459 U.S. 42, 48–49, 103 S.Ct. 394, 396–97, 74 L.Ed.2d 214 (1982).

Our review of the record reveals no support for appellant's claim of coercion. There is no evidence that police officials told appellant that the results of his polygraph exam would be admissible at trial. He was given his "polygraph rights" and advised that he did not have to take one. He was not lied to by the police. The officer did not tell appellant that he had flunked the test knowing that he had passed it. It is not in dispute that when the officer told appellant that he thought appellant had failed the test that the results, whatever their reliability, indicated that appellant had failed the test. Although we have found that the fact a polygraph test was taken was improperly mentioned to the jury, it does not automatically follow that any confession a defendant gives following a polygraph test must also be suppressed. These are two different issues, the reference to a polygraph test in front of a jury, and whether a confession is voluntary. We find that appellant's confession was not coerced by improper police tactics, but was voluntary, given after an adequate *Miranda* warning, and the trial court did not err by admitting the confession. If appellant is tried again, no reference to his having taken a polygraph test shall be admissible, but evidence of appellant's confession is admissible.

### DECISION

Appellant's confession was voluntary and the trial court did not err in admitting it.

The trial court's admission into evidence of appellant's having taken a polygraph test and its results constituted prejudicial, noncurable, and therefore reversible error and mandates a new trial.

Reversed and remanded.

SCHUMACHER, Judge (dissenting).

I respectfully dissent from the majority opinion. The evidence regarding the results of the polygraph test was introduced solely by defendant's attorney on cross-examination of Erickson, contrary to the trial court's admonition. It cannot now be complained of and used as a basis to reverse defendant's conviction.

The issue of the polygraph test arose in the following manner. At a pre-trial conference, the prosecution advised the court it was going to call Erickson as a witness. The conversation between the prosecution, defendant's attorney and the court was as follows:

MR. LYNCH: If we call Mr. Erickson, the anticipated testimony would have nothing to do with the polygraph exam; rather just that he was also present while the May 4th statement was taken, and his testimony very briefly would be, "I was there and this is what he said."

MR. MACK: In and of itself, that's not objectionable. I'm troubled with him because I can see that he's just going to be loaded for bear and to say "And, furthermore ..."

THE COURT: Well, number one, I think that any references to the polygraph examination should not be heard by the jury, and I would caution counsel for the State as well as the defense that the Court would view that with a jaundiced eye if that in fact occurred, so perhaps a preliminary caution to the State's witnesses and defense witnesses would be appropriate. We'll see where that goes. But that's what my ruling would be. And I think it's appropriate that you review that statement in detail before you proceed with it, and if you find any references to the polygraph examination, I would suggest that these be deleted and that we do so in chambers so the jury doesn't have a chance to look at that inadvertently.

Later in the conference, defendant's attorney argued that he wanted to introduce evidence of the polygraph to show the jury that defendant's confession was induced by the polygraph. The court ruled on the issue as follows:

This is a thorny issue. What I'm going to allow is this: I'll allow you to make cross-examination on the existence of a polygraph examination. *I will not allow any testimony whatsoever about the results of the polygraph examination.*

And, frankly, I'm quite concerned about even making mention of it in the jury's hearing that there was in fact a polygraph examination. Period. The only reason I am inclined to allow counsel to do so is because it's counsel for the defense that wishes to bring that subject up for the purposes of impeaching the value or the reliability of this confession. And I think you're really treading on thin ice myself, and I have a concern about the fairness of a trial to the defendant himself when the specter of a polygraph examination may in fact come up during the course of the trial. (Emphasis added).

During this conference, defendant's attorney recognized that using polygraph evidence "could be prejudicial to the defendant." He further states that "[i]t's a touchy tactic, I know that, but I think I am not consistent in my approach to the polygraph if I don't take that position."

During the trial, the prosecution called Erickson to testify. In its direct examination, neither the prosecutor nor Erickson made any mention of the polygraph test. Defendant's attorney introduced evidence of the polygraph and its results during his cross-examination of Erickson. Relevant portions of this cross-examination are as follows:

Q: Officer, you are a polygraph operator; is that correct?

A: That's correct.

Q: Prior to the interview that Officer Friedrich conducted and that we've just been talking about, you ran a polygraph interview on the defendant; is that not correct?

A: I did.

*    *    *    *    *    *

Q: *And you informed Mr. Schaeffer that, in your opinion, he had been lying on the polygraph; is that correct?* (Emphasis added).

A: That's correct.

After this cross-examination, the court instructed the jury as follows:

Before I call upon you, Mr. Lynch, I want to instruct the jury they are to disregard any evidence whatsoever about the results of a polygraph examination. The reliability of polygraphic examinations and tests are not recognized in Minnesota or anywhere else in the courts of this country. And, as a result, the actual results of any such tests may not be admitted at trial, and therefore you are specifically instructed to disregard any testimony regarding that. The only reason that that topic is even broached during the course of this trial is to give you an opportunity to know of the circumstances of the defendant's statement that was given in May of 1988 and to consider the circumstances of the statement in determining the reliability of the same, and only for that reason.

As the transcript shows, defendant's attorney, on cross-examination of Erickson, asked a leading question which directly mentioned the results of the polygraph test. Defendant should not, in deliberately and consciously pursuing his trial strategy, be able to introduce evidence about the polygraph test and, when that strategy proves unsuccessful, claim that it was reversible error to allow him to introduce that evidence.

The Minnesota Supreme Court held that when a defendant failed to make an appropriate objection regarding opinion testimony given on cross-examination, he waived any right to question the admissibility of such testimony after trial. *Kenney v. Chicago Great Western Railway Co.*, 245 Minn. 284, 289, 71 N.W.2d 669, 673 (1955). From the holding in *Kenney*, it follows that if defendant's attorney mentions the polygraph results and asks questions about it on cross-examination, he cannot later object to that evidence as constituting reversible error. The trial court properly gave a cautionary instruction which would have negated any misunderstanding the jury could have had regarding the use of the polygraph test evidence.