STATE of Minnesota,
Petitioner, Appellant,

v.

Oscar Christopher
SCHAEFFER, Respondent.

No. C9-89-1109.

Supreme Court of Minnesota.

June 15, 1990.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, and Michael Q. Lynch, Kandiyohi Co. Atty., Willmar, for appellant.

John Stuart, Minnesota State Public Defender, Melissa Victoria Sheridan, Asst. State Public Defender, St. Paul, for respondent.

COYNE, Justice.

The court of appeals granted defendant a new trial on a charge of criminal sexual conduct in the first degree on the ground that the trial court, while properly admitting defendant's confession, prejudicially erred by permitting defendant's trial counsel to elicit evidence that police used the results of a polygraph test to get defendant to confess, evidence defense counsel hoped would persuade the jury to discredit the confession. *State v. Schaeffer*, 452 N.W.2d 719 (Minn.App.1990). We conclude, however, that the trial court did not err and accordingly reverse the court of appeals and reinstate the judgment of conviction.

On April 21, 1988, the complainant, a teenager, revealed to the authorities that defendant had sexually abused her on a number of occasions. One week later, Wayne Friedrich, an investigator with the Kandiyohi County Sheriff's Department, talked with defendant in a noncustodial setting. Defendant denied the allegations of abuse but did make a damaging admis-

sion—that he once had asked the complainant's mother what she would do if she ever caught him in bed with the complainant.

On May 4, 1988, defendant voluntarily appeared at the Kandiyohi County Sheriff's Department to submit to a polygraph exam administered by Appleton Police Chief David Erickson, who is a trained polygraph operator. Erickson advised defendant of his rights, then conducted the examination. Afterward, Erickson told defendant the test results indicated defendant had been lying. Defendant then admitted some of the complainant's allegations were true.

Erickson brought Friedrich into the room. Friedrich gave defendant a *Miranda* warning and obtained a taped statement from defendant. Defendant admitted he had sexual intercourse with the complainant on three occasions between the summer of 1986 and the summer of 1987. He also admitted that on several occasions he had engaged in fellatio with her.

Defendant's trial attorney moved to suppress the confession on the ground it was an involuntary confession coerced by the polygraph operator's representation to the defendant that the test results showed he had been lying. The trial court denied the motion to suppress.

In chambers shortly before trial the prosecutor asked about "the issue of the polygraph test and how that will be handled in any testimony." At first the attorneys agreed that no one would mention the polygraph examination. At defense counsel's urging, the trial court asked both the prosecutor and defense counsel to caution their witnesses not to mention the polygraph exam. A short time later, however, defense counsel changed his mind and said he wanted to elicit some evidence about the polygraph exam in order to show the jury that the interrogation leading to the confession had coercive aspects to it. The trial court said it was a "thorny issue," that it was not going to allow any references to the result of the exam but that it was "inclined to allow" defense counsel to elicit evidence there was a polygraph exam "for the purposes of impeaching the value or the reliability of this confession." The

court added, "I think you're really treading on thin ice myself, and I have a concern about the fairness of a trial to the defendant himself when the specter of a polygraph examination may in fact come up during the course of the trial." Defense counsel said, "To be honest, so do I," but added that in his opinion the "harm has already been done" by the trial court in admitting the confession and "I'm not going to do any more harm" by the cross-examination. This was all preliminary, with the trial court saying it was not making a "definite ruling" at that point.

The matter came up again during trial. The trial court adhered to its preliminary ruling and allowed defense counsel to inquire in a limited way into the circumstances surrounding the obtaining of the confession.

During cross-examination of Erickson, defense counsel asked Erickson if one of the reasons he told defendant he had been lying on the polygraph exam "was to try to extract a confession from him." When Erickson denied that, defense counsel said, "You were just telling it to him to pass the time of day; is that correct?" In answering one of these questions, Erickson said, "I advised Mr. Schaeffer that he did not pass the exam because I didn't feel he had, and then I went in and interviewed." Defense counsel then completed his cross-examination, getting Erickson to admit that he did not obtain a confession until after he told defendant he had failed the exam.

Immediately after this cross-examination, the trial court gave a cautionary instruction, telling the jury that it must disregard any evidence about the results of the examination, that the courts do not recognize the reliability of polygraph exams and that "[t]he only reason that that topic is even broached during the course of this trial is to give you an opportunity to know of the circumstances of the defendant's statement that was given in May of 1988 and to consider the circumstances of the statement in determining the reliability of the same, and only for that reason."

In his closing statement to the jury, defense counsel, in addition to arguing that

the complainant's testimony was unreliable and inadequate to support a conviction, argued that the confession was open to question because defendant had denied his guilt until the officer told him the polygraph exam showed he had been lying.

On appeal defendant, represented by the state public defender, argued that the trial court prejudicially erred in refusing to suppress the confession and in allowing admission of the evidence concerning the polygraph examination. The court of appeals unanimously ruled that the trial court did not err in refusing to suppress the confession, but ruled by a vote of 2–1 that the trial court did err, and prejudicially so, in allowing defense counsel to elicit the evidence about the polygraph exam. *State v. Schaeffer,* 452 N.W.2d 719 (Minn.App. 1990).

■ The court of appeals correctly ruled that the confession was voluntary and uncoerced. Both the United States Supreme Court and this court have upheld confessions obtained in similar circumstances when the police used the results of a polygraph exam to persuade the suspect to confess. *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982); *State v. Jungbauer,* 348 N.W.2d 344 (Minn.1984). As we said in *Jungbauer,* the result might be different if the evidence indicates the police misrepresented the reliability of the test or falsely implied the results would be admissible in evidence. 348 N.W.2d at 346.

■ We disagree, however, with the court of appeals' conclusion that the trial court erred in letting defense counsel proceed as he did on cross-examination.

Cases of both the United States Supreme Court and this court hold that after the trial court denies a motion to suppress a confession as an involuntary confession, the defense may present evidence to the jury on the circumstances surrounding the making of the confession. In *Crane v. Kentucky,* 476 U.S. 683, 688–91, 106 S.Ct. 2142, 2145–47, 90 L.Ed.2d 636 (1986), the United States Supreme Court unanimously ruled it was a violation of the defendant's right to present a defense when the trial court excluded competent, reliable evidence

bearing on the credibility of a confession—specifically, evidence about the physical and psychological environment in which the confession was obtained. As the Court put it:

> The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to resolve. * * * But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise * * * unworthy of belief." * * * Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defense is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

476 U.S. at 688–89, 106 S.Ct. at 2145–46 (citations omitted).

Minnesota case law is in accord. This court follows the so-called "orthodox rule," letting the trial court determine voluntariness and admissibility. *State v. Wajda,* 296 Minn. 29, 31, 206 N.W.2d 1, 2 (1973). As we said in *Wajda,* if the trial court admits the confession, the trial court "must permit the jury to hear evidence on the circumstances surrounding the making of the confession—under the orthodox rule, for a determination of weight and credibility * * *." *Id.*

Notwithstanding the general inadmissibility of polygraph evidence, *State v. Anderson*, 379 N.W.2d 70, 79 (Minn.1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986), the trial court had no real choice but to grant defense counsel's request. As stated in Reid and Inbau, *Truth and Deception: The Polygraph ("Lie Detector") Technique* 254 (1966), "The choice * * * rest[s] with the defense attorney as to whether or not * * * to inject the [p]olygraph issue into the case for the purpose of attempting to show that it or the technique was a coercive factor * * *," *quoted in State v. Green*, 271 Or. 153, 170, 531 P.2d 245, 253 (1975) (defendant entitled to a new trial because the state improperly elicited evidence about the polygraph exam without the defendant having "opened the door," but defense entitled to attempt to discredit a defendant's confession by offering evidence that the confession was given following a polygraph exam).

In conclusion, the trial court merely allowed defense counsel to do what the defendant had a right to do under *Crane* and *Wajda*, and the court of appeals therefore erred in granting defendant a new trial on this ground.

Reversed and judgment of conviction reinstated.