# WYRICK, WARDEN, MISSOURI STATE PENITEN-TIARY *v.* FIELDS

No. 82–158.   Decided November 29, 1982

PER CURIAM.

In this case, the United States Court of Appeals for the Eighth Circuit, over a dissent by Judge Ross, directed that respondent Edward Fields' petition for a writ of habeas corpus be granted; it did so on the ground that Fields had been convicted with evidence obtained in violation of his Fifth Amendment right to have counsel present at an interrogation. 682 F. 2d 154 (1982). We have concluded that the Court of Appeals' majority misconstrued this Court's recent decision in *Edwards* v. *Arizona*, 451 U. S. 477 (1981), and imposed a new and unjustified limit on police questioning of a suspect who voluntarily, knowingly, and intelligently waives his right to have counsel present.

## I

Respondent, a soldier then stationed at Fort Leonard Wood, Mo., was charged with raping an 81-year-old woman on September 21, 1974. After his arrest on September 25, Fields was released on his own recognizance. He retained

private defense counsel. After discussing the matter with his counsel and with a military attorney provided him by the Army, Fields requested a polygraph examination. This request was granted and the examination was conducted on December 4 by an agent of the Army's Criminal Investigation Division (CID) at the fort.

Prior to undergoing the polygraph examination, Fields was given a written consent document, which he signed, informing him of his rights, as required by *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and of his rights under the Uniform Code of Military Justice and the Eighth Amendment. In addition, the CID agent read to Fields the following detailed statement:

> "Before I ask you any questions, you must understand your rights. You do not have to answer my questions or say anything. Anything you say or do can be used against you in a criminal trial. You have a right to talk to a lawyer before questioning or have a lawyer present with you during the questioning. This lawyer can be a civilian lawyer of your own choice, or a military lawyer, detailed for you at no expense to you. Also, you may ask for a military lawyer of your choice by name and he will be detailed for you if superiors determine he's reasonably available. *If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate.* Do you want a lawyer at this time?" See *State* v. *Fields*, 538 S. W. 2d 348, 350, n. 1 (Mo. App. 1976) (emphasis added).

Fields answered: "No."

At the conclusion of the polygraph examination, which took less than two hours, the CID agent told Fields that there had been some deceit, and asked him if he could explain why his answers were bothering him. Fields then admitted having

intercourse with the victim on September 21, but said that she had instigated and consented to it. The agent asked Fields if he wished to discuss the matter further with another CID agent and with the Waynesville, Mo., Chief of Police. Fields said that he did. Then, in his turn, the Police Chief read Fields his *Miranda* warnings once again before questioning him. Fields repeated that he had had sexual contact with the victim, but that it had been consensual.

Respondent was tried before a jury in the Circuit Court, Pulaski County, Mo. He sought to suppress the testimony of the two CID agents and the Police Chief regarding his "confessions" to voluntary intercourse. The trial court denied the motion, ruling that Fields had waived his rights. The testimony was admitted. Fields was convicted, and was sentenced to 25 years in prison. The Missouri Court of Appeals affirmed the judgment on the ground that Fields "had been repeatedly and amply advised of his rights and . . . voluntarily, knowingly and intelligently waived his rights." 538 S. W. 2d, at 350.

Eventually, Fields sought a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. The District Court, agreeing with the Missouri Court of Appeals that Fields had voluntarily, knowingly, and intelligently waived his right to counsel, denied respondent's petition. On appeal, however, the Eighth Circuit reversed and remanded the case with directions to order the State either to release Fields or to afford him a new trial. 682 F. 2d, at 162.

## II

The Court of Appeals found that the police conduct in question contravened the "clear import" of this Court's decision in *Edwards* v. *Arizona:* "a defendant's right to have counsel present at custodial interrogations must be zealously guarded." 682 F. 2d, at 158. In *Edwards*, this Court had held that once a suspect invokes his right to counsel, he may not be subjected to further interrogation until counsel is pro-

vided unless the suspect himself initiates dialogue with the authorities. 451 U. S., at 484–487. The Eighth Circuit recognized that what it called the "per se rule" of *Edwards* "does not resolve the issue present here." 682 F. 2d, at 158. Fields and his counsel had agreed that Fields should take the polygraph examination, and Fields appeared voluntarily and stated that he did not want counsel present during the interrogation. Thus, the Court of Appeals conceded that "Fields thereby 'initiated' further dialogue with the authorities after his right to counsel had been invoked." *Ibid.*

When the suspect has initiated the dialogue, *Edwards* makes clear that the right to have a lawyer present can be waived:

> "If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." 451 U. S., at 486, n. 9.

Citing this language, the Eighth Circuit acknowledged—as it had to—that "[t]here is no question that Fields waived his right to have counsel present while the [polygraph] examination itself was being conducted." 682 F. 2d, at 160. Yet that court found that the State had failed to satisfy its burden of proving that "Fields knowingly and intelligently waived his right to have counsel present at the post-test interrogation." *Ibid.* The court suggested that had the CID agent merely "paus[ed] to remind the defendant" of his rights, thus

providing *"meaningfully timed Miranda* warnings" (emphasis in original), there would have been no violation. *Ibid.*

## III

In reaching this result, the Court of Appeals did not examine the "totality of the circumstances," as *Edwards* requires. Fields did not merely initiate a "meeting." By requesting a polygraph examination, he initiated interrogation. That is, Fields waived not only his right to be free of contact with the authorities in the absence of an attorney, but also his right to be free of interrogation about the crime of which he was suspected. Fields validly waived his right to have counsel present at "post-test" questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a "knowing and intelligent relinquishment or abandonment" of his rights. 451 U. S., at 482.

The Court of Appeals relied on two facts indicating the need for a new set of warnings: the polygraph examination had been discontinued, and Fields was asked if he could explain the test's unfavorable results. To require new warnings because of these two facts is unreasonable. Disconnecting the polygraph equipment effectuated no significant change in the character of the interrogation. The CID agent could have informed Fields during the examination that his answers indicated deceit; asking Fields, after the equipment was disconnected, why the answers were bothering him was not any more coercive. The Court of Appeals stated that there was no indication that Fields or his lawyer anticipated that Fields would be asked questions after the examination. But it would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result. Moreover, Fields had been informed that he could stop the questioning at any time, and could request at any time that

his lawyer join him. Merely disconnecting the polygraph equipment could not remove this knowledge from Fields' mind.*

The only plausible explanation for the court's holding is that, encouraged by what it regarded as a *per se* rule established in *Edwards*, it fashioned another rule of its own: that, notwithstanding a voluntary, knowing, and intelligent waiver of the right to have counsel present at a polygraph examination, and notwithstanding clear evidence that the suspect understood that right and was aware of his power to stop questioning at any time or to speak to an attorney at any time, the police again must advise the suspect of his rights before questioning him at the same interrogation about the results of the polygraph. The court indicated that this rule was needed because it thought that the use of polygraph "results" in questioning, although it does not necessarily render a response involuntary, is inherently coercive. But Courts of Appeals, including a different panel of the Eighth Circuit itself, and state courts, have rejected such a rule. See, *e. g.*, *United States* v. *Little Bear*, 583 F. 2d 411, 414 (CA8 1978); *Keiper* v. *Cupp*, 509 F. 2d 238, 241–242 (CA9 1975); *People* v. *Barreto*, 256 Cal. App. 2d 392, 64 Cal. Rptr. 211 (1967); *State* v. *Henry*, 352 So. 2d 643 (La. 1977). Cf. *Henry* v. *Dees*, 658 F. 2d 406 (CA5 1981) (waiver not voluntary, knowing, and intelligent in the total circumstances of the case, including mental retardation of suspect). The Eighth Circuit's rule certainly finds no support in *Edwards*, which emphasizes that the totality of the circumstances, including the fact that the suspect initiated the questioning, is controlling. Nor is the

---

*The dissent suggests that, because the results of polygraph examinations are inadmissible in Missouri, Fields might reasonably have expected that he would not be subjected "to additional questioning that can produce admissible evidence." *Post*, at 51, n. 2. Although the results of the polygraph examination might not have been admissible evidence, the statements Fields made in response to questioning during the course of the polygraph examination surely would have been.

rule logical; the questions put to Fields after the examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before. The rule is simply an unjustifiable restriction on reasonable police questioning.

## IV

According to the dissent, a substantial question as to the admissibility of Fields' statements may be raised under the Sixth Amendment. *Post*, at 52–55. The Sixth Amendment issues raised by the dissent, however, are not before us. The Court of Appeals rested its judgment exclusively on the Fifth Amendment "right to have counsel present during a custodial interrogation" and on its interpretation of this Court's decision in *Edwards*. 682 F. 2d, at 158. That interpretation was flawed and the judgment of the Court of Appeals must be reversed. We express no view as to whether any constitutional safeguards not mentioned by the Court of Appeals bear on this case.

Because the Court of Appeals misapplied *Edwards* and created an unjustified *per se* rule, the petition for a writ of certiorari is granted and that court's judgment is reversed and the case is remanded.

*It is so ordered.*

JUSTICE STEVENS, concurring.

There is much force to what JUSTICE MARSHALL has written in dissent. I share his concern about the Court's practice of deciding cases summarily, partly because there is a special risk of error in summary dispositions and partly because the practice represents an unwise use of the Court's scarce resources. I do not, however, agree with JUSTICE MARSHALL's suggestion that we should invite the parties to submit briefs on the merits before a case is summarily decided. I fear that the institution of such a practice would tend to regularize and expand the number of our summary dispositions.

In this case I believe the correct procedure for the Court to have followed would have been simply to deny the petition for a writ of certiorari. No conflict has yet developed on the precise question presented and, as JUSTICE MARSHALL demonstrates, the Court of Appeals' conclusion is not without reasoned support. The Court, however, has granted the petition. Although I voted against that action, I am now persuaded that the Court's resolution of the merits is correct and therefore join its disposition.

JUSTICE MARSHALL, dissenting.

A summary reversal is an exceptional disposition. It should be reserved for situations in which the applicable law is settled and stable, the facts are not disputed, and the decision below is clearly in error.[1] Because I do not believe that this is such a case, I dissent.

## I

I do not agree that respondent's consent to the polygraph examination necessarily constituted a waiver of his Fifth Amendment rights with respect to the postexamination interrogation. In my view, this case is not controlled by the footnote in *Edwards* v. *Arizona*, 451 U. S. 477, 486, n. 9 (1981), on which the Court relies. That footnote dealt with the hypothetical case, not before the Court in *Edwards*, of a suspect who initiates a meeting with the police. The Court indicated that, even if the police said or did something in the meeting that constituted interrogation, incriminating statements thereby elicited would be admissible if a knowing and intelligent waiver of the suspect's Fifth Amendment rights could be inferred in light of *"the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Ibid.* (Emphasis supplied.)

---

[1] See generally Brown, Foreword: Process of Law, 72 Harv. L. Rev. 77 (1958).

In this case, "the totality of the circumstances" includes the undisputed facts that respondent agreed only to submit to a polygraph examination, and that he was never told he would be subjected to a postexamination interrogation. Moreover, an agreement to submit to a polygraph examination differs in an important respect from the initiation of an ordinary conversation with the authorities. When a suspect commences a conversation with a policeman, he has reason to expect that, as in any conversation, there will be a give-and-take extending beyond the subject matter of his original remarks. It may therefore be appropriate to conclude that the suspect's waiver of his Fifth Amendment rights extends to the entire conversation. By contrast, a polygraph examination is a discrete test. It has a readily identifiable beginning and end. An individual who submits to such an examination does not necessarily have any reason whatsoever to expect that he will be subjected to a postexamination interrogation.[2] While in some cases the prosecution may be able to prove that a suspect knew there would be questioning after the test, here there is "no evidence that Fields or his lawyer anticipated that the CID officer would attempt to elicit incriminating statements from Fields after the examination was run." 682 F. 2d 154, 160 (CA8 1982).

In any event, I do not believe that this substantial constitutional question should be disposed of summarily. I recog-

---

[2] Certainly no one would argue that a suspect who consented to a blood test, a lineup, or fingerprinting thereby consented to be questioned about the results of those procedures.

In this case, it is particularly inappropriate to assume that Fields must have realized that the CID agent would conduct a postexamination interrogation. The results of polygraph examinations are inadmissible in Missouri. See State v. Biddle, 599 S. W. 2d 182, 191 (Mo. 1980) (en banc); State v. Weindorf, 361 S. W. 2d 806, 811 (Mo. 1962). When a defendant, after consultation with his attorney, agrees to submit to an examination the results of which are inadmissible, the authorities have no justification for inferring that the defendant has also agreed to submit to additional questioning that can produce admissible evidence.

nize, of course, that this Court's expanding docket has increased the pressure to accelerate the disposition process. I cannot agree, however, that summary reversal is proper in a case that involves a significant issue not settled by our prior decisions. If the Court concludes that there are "special and important reasons," this Court's Rule 17.1, for granting certiorari but also concludes that this case should not be set for oral argument, the Court should at least give the parties notice that it is considering a summary disposition, so that they may have an opportunity to submit briefs on the *merits*. See Brown, Foreword: Process of Law, 72 Harv. L. Rev. 77, 94–95 (1958).

## II

Today's decision holds only that the postexamination interrogation did not violate respondent's Fifth Amendment privilege against self-incrimination. The Court's ruling does not preclude the Court of Appeals from considering on remand whether the interrogation nevertheless violated his Sixth Amendment right to counsel.[3] See *Massiah* v. *United*

---

[3] I do not share the majority's certainty that the Court of Appeals relied "exclusively on the Fifth Amendment." *Ante*, at 49. Although the opinion below does discuss *Edwards* v. *Arizona*, 451 U. S. 477 (1981), at considerable length, the court phrased its holding in terms of the "right to counsel" without referring specifically to the Fifth Amendment or the Sixth Amendment. See 682 F. 2d 154, 157 (CA8 1982) ("we conclude that Fields did not knowingly and intelligently waive his right to have counsel present at the interrogation"); *id.*, at 161 ("The government has simply introduced no evidence from which we can conclude that when Fields was confronted with the accusatory statement that the 'lie-detector' showed he was lying, he waived his right to the protection of counsel in this coercive situation"). See also *id.*, at 161, n. 12 (relying on *Brewer* v. *Williams*, 430 U. S. 387 (1977), a Sixth Amendment case). It is noteworthy that the Magistrate, whose report the District Court adopted, pointed to the Sixth Amendment problem by observing that it is "a somewhat empty gesture to appoint an attorney for an accused . . . and then pursue [an] interrogation . . . without his attorney." In addition, the petition for certiorari asserts that the decision below "expands the rights guaranteed an accused during

*States*, 377 U. S. 201 (1964). Because "the policies under-lying the two constitutional protections are quite distinct," *Rhode Island* v. *Innis*, 446 U. S. 291, 300, n. 4 (1980), a sus-pect may waive his Fifth Amendment right to remain silent without waiving his Sixth Amendment right to counsel.

Where only the Fifth Amendment applies, the ultimate question is whether the conduct alleged to constitute a waiver demonstrates that, despite "the compulsion inherent in custodial surroundings," *Miranda* v. *Arizona*, 384 U. S. 436, 458 (1966), the suspect's statements were given volun-tarily. To make the Fifth Amendment protection against compelled self-incrimination effective, this Court has held that a suspect has a right to have counsel present at any cus-todial interrogation. *Id.*, at 469–472. Once a suspect in cus-tody asks to speak to a lawyer, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards* v. *Arizona*, 451 U. S., at 484–485. When a suspect has indicated that he needs legal advice before deciding whether to talk further, any subsequent statements made at the authorities' insistence without counsel being present are unlikely to be voluntary. See *Michigan* v. *Mosley*, 423 U. S. 96, 110, n. 2 (1975) (WHITE, J., concurring in result). If, on the other hand, the subsequent statements are made in a conversation initiated by the accused, they may well be vol-untary. See *Edwards* v. *Arizona, supra*, at 486, n. 9. Since the underlying purpose of the privilege against self-incrimination is to prevent the State from coercing an indi-vidual to give evidence against himself, it makes sense to find

interrogation under the Fifth *and Sixth Amendments*." Pet. for Cert. 7 (emphasis supplied).

In any event, since the Court today construes the Court of Appeals' opin-ion as resting solely on the Fifth Amendment, the Sixth Amendment issue remains open on remand.

a waiver of the privilege where a suspect's conduct provides assurance that his statements were made voluntarily.

The determination of whether there has been a valid waiver of the Sixth Amendment right to counsel has a different focus, for the values underlying that right are different. The purpose of the Sixth Amendment right to counsel is to provide the defendant with legal assistance during the critical stages of the criminal process. See, *e. g.*, *Brewer* v. *Williams*, 430 U. S. 387, 398 (1977); *Powell* v. *Alabama*, 287 U. S. 45, 57 (1932). To give effect to this protection, this Court has insisted that the State deal with a defendant through his attorney. Once the State has commenced adversary criminal proceedings against an individual, as Missouri did in this case more than two months before the polygraph examination was held, the Sixth Amendment forbids *all* efforts to elicit information from him in the absence of counsel, regardless of whether he is in custody, see *United States* v. *Henry*, 447 U. S. 264, 273–274, n. 11 (1980); *Massiah* v. *United States*, *supra*, and regardless of whether the technique used to extract information is in any way coercive, see *McLeod* v. *Ohio*, 381 U. S. 356 (1965).

To establish a waiver of the Sixth Amendment right to counsel, it is therefore not enough for the State to point to conduct—such as the initiation of a conversation—that demonstrates that the defendant's statements were made voluntarily. Since a Sixth Amendment violation does not depend upon coercion, the protection of the Sixth Amendment is not waived by conduct that shows only that a defendant's statements were not coerced. The State must show that the defendant intelligently and knowingly relinquished his right not to be questioned in the absence of counsel. The State can establish a waiver only by proving "'an intentional relinquishment or abandonment'" of the right to have counsel present. *Brewer* v. *Williams*, *supra*, at 404, quoting *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938).[4]

---

[4] *Edwards* v. *Arizona*, *supra*, addressed only the standard governing waiver of the Fifth Amendment privilege against self-incrimination.

Given the different policies underlying the Fifth and Sixth Amendments, it is not surprising that a number of courts have held that "'[w]arnings by law enforcement officers and subsequent action by the accused that might suffice to comply with Fifth Amendment strictures against testimonial compulsion [do] not necessarily meet . . . the higher standard with respect to waiver of the right to counsel that applies when the Sixth Amendment [right to counsel] has attached.'" *United States* v. *Mohabir*, 624 F. 2d 1140, 1147 (CA2 1980), quoting *United States* v. *Massimo*, 432 F. 2d 324, 327 (CA2 1970) (Friendly, J., dissenting) (majority did not reach the issue), cert. denied, 400 U. S. 1022 (1971).[5] Today's decision therefore does not foreclose the Court of Appeals from considering on remand whether the postexamination interrogation violated the Sixth Amendment.

---

Since the Court concluded that Edwards had been interrogated in violation of the Fifth Amendment, it had no occasion to consider whether the Sixth Amendment applied or whether, if so, Edwards had waived its protection. See *id.*, at 480, n. 7.

[5] See *United States ex rel. O'Connor* v. *New Jersey*, 405 F. 2d 632, 636 (CA3), cert. denied, 395 U. S. 923 (1969); *Hancock* v. *White*, 378 F. 2d 479, 482 (CA1 1967). See also *United States* v. *Springer*, 460 F. 2d 1344, 1354–1355 (CA7) (Stevens, J., dissenting), cert. denied, 409 U. S. 873 (1972); *People* v. *Arthur*, 22 N. Y. 2d 325, 330, 239 N. E. 2d 537, 539 (1968). See generally Note, 82 Colum. L. Rev. 363 (1982).