SHORTESS, Judge.
Carolyn Wall (defendant) and her mother, Dorothy Wall, were each charged by a single bill of information with one count of forgery and one count of felony theft in violation of La.R.S. 14:72 and 14:67, respectively. Defendant pled not guilty and after a jury trial was found guilty as charged on each count.[1] The court sentenced defendant to five years at hard labor on each count to run concurrently. Execution of the sentence was suspended, and defendant was placed on supervised probation for three years with the special condition that she make restitution to the victim in the full amount of $25,000.00 principal, with interest at the rate of 12%. Defendant was also sentenced to pay court costs within one year or in default thereof to serve one year in the Parish prison.
Defendant appeals, urging five assignments of error:
1. The trial court committed error when the trial judge refused to grant defendant’s request for pretrial discovery on the basis that it was not timely filed.
2. The trial court committed error when the trial judge refused defendant’s request for a hearing regarding her motion to quash the bill of information filed against her.
3. The trial court committed error when the trial judge refused to allow full cross-examination of a prosecution witness and by failing to permit the accused to fully confront one of her accusers.
4. The trial court committed error when the trial judge refused to grant defendant’s motion to suppress evidence.
5. The trial court committed error when the trial judge refused to grant defendant’s motion to quash the bill of information when there was no warrant or probable cause for the arrest of defendant, Carolyn Wall.
In September, 1982, Power Packing Company of Baton Rouge issued a check drawn on its Capital Bank account for $25,000.00 made payable to a New York investment company named Rudolph Wolfe. A short time after issuance of the check, Thomas Alexander, Power Packing Company’s president, learned that the intended payee had not received the check. Alexander checked his cancelled checks only to learn that the check had been paid after improper endorsement.
R.D. King, security officer for Capital Bank, conducted a preliminary investigation into circumstances surrounding negotiation of the instrument. He learned from Alexander that the check had been given to Carolyn Wall, his secretary, to mail. He also learned that defendant’s mother, Dorothy Wall, had a criminal record for felony theft.
Paul Vilmarette, the Capital Bank branch manager who authorized cashing of the check provided details as to circumstances surrounding its negotiation. An older woman, who identified herself as “Marie Wolfe,” presented the check at his branch for cashing on September 20, 1982. She stated to him that the check was payment for work-related injuries sustained by her husband, Rudolph Wolfe. Vilmarette tried to convince her not to take cash but to open an account. The woman left the bank under the pretext of asking her husband if he would open an account. The next day she returned and stated that her husband, who did not trust banks, wanted the full amount in cash.
In the process of verifying the check, Vilmarette telephoned Power Packing Company. He spoke with a woman who identified herself as Kathy Grant, who approved *1227 the check. In reality, there was no employee of Power Packing named Kathy Grant.
The check was endorsed with the name “Rudolph Wolfe” when presented to Vil-marette. The name of “Marie Wolfe” was added as an endorsement at Vilmarette’s instruction.
Sgt. Steve Weber of the East Baton Rouge Parish Sheriff’s Office compiled a photo array for Vilmarette’s examination. He positively identified Dorothy Wall as the “Marie Wolfe” who had endorsed the check and received the $25,000.00 in cash.
Thereafter, Weber and King, unable to locate Dorothy Wall at her home, proceeded to Power Packing Company where they verified by means of employee computer time sheets that Carolyn Wall was the only person on duty answering the telephone during the time that Vilmarette spoke with “Kathy Grant.”
Confronted by Weber and King, defendant made statements inculpating herself and her mother, Dorothy Wall. The instant charges were thereafter brought against both.
The joint prosecution against defendant and Dorothy Wall was severed for trial on the merits. In her separate trial on the merits, Dorothy Wall was also convicted as charged on each count. She previously appealed her conviction and sentence to this court citing many of the same pretrial assignments as urged herein.
For the reasons fully set forth in State v. Dorothy Wall, 452 So.2d 222 (La.App.lst Cir.1984) we find that assignments of error Nos. 1, 2, 3 and 5, which relate to disposition and conduct of various joint pretrial motions, are without merit as applied to defendant Carolyn Wall.
In assignment of error No. 4 defendant urges that the trial court erred when it failed to suppress her confession consisting of oral statements made to King, oral statements made to Weber and a written statement made by her at the courthouse.
Defendant argues that her Fourth and Fourteenth Amendment rights were violated because Weber did not have probable cause to believe she had committed any crime before she gave her inculpating statement. She cites as authority Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) for her argument that since Weber had no probable cause her arrest was illegal, thereby rendering any statements made by her inadmissible fruits of an illegal arrest, as the State failed to show that her statements did not result from “an intervening independent act of a free will,” and that they were not “sufficiently an act of free will to purge the primary taint of the unlawful invasion.”
Did Weber have reasonably trustworthy information sufficient to “justify a man of ordinary caution” in believing defendant had committed a crime before defendant made her inculpating statements? He knew this: (1) defendant was given the check and told to mail it, (2) defendant was the last person in the office to have the check, (3) defendant’s mother had been identified by Vilmarette as the person who cashed the check and had a prior felony record, (4) defendant was the only person in the office when Vilmarette called and spoke to a person who identified herself as “Kathy Grant,” and (5) there was no Kathy Grant employed by Power Packing at the time in question. Weber had probable cause to arrest defendant without the incul-patory statements. Defendant’s Fourth Amendment argument lacks merit. Brown v. Illinois and Wong Sun v. United States are inapposite. It is not necessary, therefore, to determine if defendant’s statements resulted from “an intervening independent act of a free will,” or whether they were “sufficiently an act of free will to purge the primary taint of the unlawful invasion.” Wong Sun v. United States, 83 S.Ct. at 416.
Additionally, defendant’s motion to suppress filed in the trial court alleged as grounds that “the confession of Carolyn Wall... was obtained by unconstitutional means ... [in that] Carolyn Wall requested *1228 an attorney be present and no attorney was provided for her at the time.”
Evidence adduced at the motion to suppress reveals that on the afternoon of October 5, 1982, King and Weber confronted defendant at Power Packing’s conference room.[2]
Both Weber and King testified that defendant was immediately given her Miranda rights and advised of the nature of the charges. Weber was not certain if defendant immediately signed the waiver form, but both he and King agreed that defendant did request an attorney before she would speak.
King testified that he and Weber then left defendant alone in the conference room while Weber called for a unit to transport defendant to the courthouse. King returned to the conference room about 10 minutes later after receiving Weber’s permission to talk with defendant. King advised defendant that he was not a law enforcement officer but, rather, an officer of Capital Bank. He summarized the evidence against defendant and her mother and offered his opinion that it would be better if she would talk with Weber.
After defendant had admitted her involvement in the scheme to King, she agreed to talk with Weber. Weber returned to the conference room and learned that she wanted to make a statement. Before permitting her to speak, he gave her a waiver of rights form to read and sign. After signing it, she made oral inculpatory statements. She was thereafter transported to the courthouse for booking. Later, a written statement was made at the courthouse.[3]
Weber’s testimony was substantially the same as King’s. However, Weber did not recall King leaving the conference room after defendant’s request for an attorney, nor did he recall a conversation wherein King requested an opportunity to talk with defendant.
Defendant’s testimony differed from that of King and Weber in several respects. She denied having been advised of her Miranda rights until she arrived at the courthouse. Further, defendant insisted that she had requested the presence of an attorney at least four or five times while in Power Packing’s conference room. She admitted knowing that King was not a law enforcement officer but testified that her statements to him were induced by his promises to accept restitution as disposition of any criminal charges.[4]
Defendant argues that her Fifth Amendment right to have counsel present during custodial interrogation, identified in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not scrupulously honored by law enforcement officers as required by State v. Thucos, 390 So.2d 1281 (La.1980).
Recent jurisprudence, not relied on by defendant, requires a stringent safeguard when defendant requests an attorney during custodial interrogation. In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that an accused, having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges or conversation with the police. The court restated the requirements in Wyrick v. Fields, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), noting that before a suspect may be subjected to further interrogation after he requests an attorney there must be a showing that the “suspect *1229 himself initiates dialogue with the authorities.”
The first question for our consideration is whether King’s conversation with defendant, following her request for counsel and after Weber had left the conference room, constituted further interrogation by the authorities in violation of Edwards v. Arizona.
There is no evidence of record that King spoke with defendant at the request of Weber nor that King was operating as a police agent in the investigation of the forged check. King talked with defendant for his own purposes. He wanted to recover the $25,000.00 for his employer, which had borne the loss from the forged instrument. We find that King’s inquiry could not cause defendant to believe that her right to an attorney before questioning had been lost.
We further find that defendant’s later conversation with Weber was initiated by her. The standard announced in Edwards v. Arizona erects a bar to further police initiative in communications after request for an attorney; it does not bar communication initiated by the accused. Defendant’s inculpatory statement to Weber was unsolicited by him. It was made only after Weber warned her again and gave her a written waiver of rights form to read and sign, which she did. It was not made in response to any questioning by Weber. These precautions taken by Weber before he permitted defendant to speak clearly satisfy the Edwards rule.
In Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the court noted that after finding no violation of the Edwards rule, the issue of whether the purported waiver of the right to counsel was knowing and intelligent under the totality of the circumstances must be addressed.
In addition, Louisiana statutory law requires that before a confession or incul-patory statement may be introduced in evidence, the State must prove affirmatively and beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(G); State v. Nathan, 444 So.2d 231 (La.App.1st Cir.1983), cert. denied, 445 So.2d 1232 (La.1984).
The trial judge made this necessary inquiry noting extensive reasons for his findings. In pertinent part, he found each of defendant’s allegations of misconduct specifically rebutted by the State. The allegation that defendant was not advised of her Miranda rights at the initial meeting was specifically rebutted by testimony of Weber and King as was the allegation that King had suggested restitution as resolution of criminal charges stemming from negotiation of the check.
The trial judge found that during her conversation with King defendant changed her mind about requiring the presence of an attorney and that she wanted to talk with Weber. Defendant, an intelligent woman, articulated a willingness to discuss the investigation with Weber. Weber again advised defendant of her rights and obtained a valid written waiver of rights before listening to her statement.
The decision of the trial judge on the question of whether the confession was voluntarily given is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Haynie, 395 So.2d 669 (La.1981); State v. Odds, 430 So.2d 1269 (La.App.1st Cir.1983).
The trial judge’s conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Loyd, 425 So.2d 710 (La.1982).
From our review of the record, we conclude that the trial judge’s finding that defendant’s statements were freely and voluntarily given is adequately supported by the testimony of Weber and King. Her oral and written inculpatory statements were properly admissible at the trial on the merits.
*1230 Assignment of error number 4 is without merit.
Accordingly, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Carolyn Wall and her co-defendant Dorothy Wall were tried separately, as the State intended to use Carolyn Wall’s confession at trial. Admission of Carolyn Wall's confession in a joint trial would have violated Dorothy Wall’s right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

. On that same morning, Weber had presented the photo array to Vilmarette, who positively identified Dorothy Wall.

. The written statement was not signed by defendant on the advice of her attorney who arrived at the police station as defendant was about to complete her written statement.

.On rebuttal, King expressly denied any discussion with defendant with respect to restitution. He asserted that Capital Bank’s policy was to accept restitution as disposition of a criminal charge only if ordered to do so by a court.