UNITED STATES of America, Plaintiff,

v.

**Desmond A. SMITH, Defendant.**

**Crim. A. No. 87–106 MMS.**

United States District Court,
D. Delaware.

Feb. 10, 1988.

---

Edmond Falgowski, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

Andrew G. Ahern, III, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

On December 2, 1987, Corporal Robert Durnan of the Delaware State Police stopped Desmond Smith for changing lanes without using his turn signals. During a patdown of Mr. Smith, Corporal Durnan discovered cocaine and arrested Mr. Smith. Mr. Smith filed a pretrial motion to suppress the cocaine as well as Mr. Smith's statements to Corporal Durnan and to Agent Glanz of the Drug Enforcement Administration (DEA). At the evidentiary hearing on January 14, 1988, the Court made findings of fact and ruled against the suppression of the cocaine and the statement to Corporal Durnan. However, the Court deferred ruling on whether the statement to Agent Glanz should be suppressed because he did not repeat the *Miranda* warnings given by Corporal Durnan at the time of the arrest.

## I. *Findings of Fact* [1]

At 11:20 a.m. on December 2, 1987 Corporal Durnan stopped defendant on Interstate 95 for changing lanes without using his turn signals. Pursuant to a patdown search, Corporal Durnan discovered cocaine in defendant's pants pocket. At about 11:25 a.m. Corporal Durnan handcuffed Mr. Smith, placed him under arrest and read him the *Miranda* warnings from a card. Defendant said that he understood these rights. He was coherent and responsive, and not under the influence of drugs or alcohol. No threats or promises were made by the police.

While Corporal Durnan and Mr. Smith were talking, Trooper Thomas of the Delaware State Police also arrived on the scene.

He did not participate in the conversation, but drove Mr. Smith back to Troop 6 headquarters after the arrest. During the ride, Trooper Thomas did not discuss the case or the arrest with Mr. Smith.

After the arrival at Troop 6 approximately one-half hour after the arrest, Corporal Durnan interviewed Mr. Smith about 12:30 p.m. without repeating the *Miranda* warnings. Mr. Smith informed Corporal Durnan that he got the package from someone in Florida and was to deliver it to a third party in New York. Mr. Smith asserted he did not know the package contained cocaine. In the suppression hearing, the Court ruled that Mr. Smith's statement to Corporal Durnan was voluntary, and not in violation of *Miranda*.

Corporal Durnan then transported Mr. Smith to the DEA office in downtown Wilmington. They arrived at approximately 1:30 that afternoon. Agent Glanz of the DEA began interviewing Mr. Smith in his office at the DEA about 2:00 p.m. Corporal Durnan had informed him that *Miranda* warnings had been given, and Agent Glanz did not repeat the warnings nor advise Mr. Smith that he could remain silent. Mr. Smith indicated no discomfort or anxiety during the interview except for concern over the possible loss of employment. Mr. Smith never asked for an attorney during the interview. During his questioning Agent Glanz obtained personal history information and learned that Mr. Smith had a phone number to call in New York in order to set up a meeting on the street to deliver the package from Florida. Agent Glanz interviewed Mr. Smith alone and made no threats or promises to induce the statement.

## II. *Analysis*

■ The Court must decide whether DEA Agent Glanz was required to readminister the *Miranda* warnings prior to interrogating Mr. Smith at the DEA office.

---

1. Only those facts relevant to the validity of Mr. Smith's statement to Agent Glanz will be discussed here. The Court made findings of fact relevant to the decided issues at the suppression hearing.

In the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court required that certain warnings be given prior to custodial interrogation in order for any statement to later be admissible in court. *Id.* at 476, 86 S.Ct. at 1628–29. Before questioning, the person in custody must be informed that he has the right to remain silent, that anything said can and will be used against him in a court of law, that he has the right to have a lawyer present and that a lawyer will be appointed if he cannot afford one. *Id.* at 467–73, 86 S.Ct. at 1624–27. If the person being interrogated indicates he wishes to exercise any of these rights, the questioning must cease. *Id.* at 474, 86 S.Ct. at 1627–28. The individual must waive these rights for questioning to proceed. *Id.* at 476, 86 S.Ct. at 1628–29.

There is no question that Agent Glanz was interrogating Mr. Smith, or that Mr. Smith was in custody at the time of the interrogation. The Court ruled in the suppression hearing that Mr. Smith was properly warned and waived his rights prior to the questioning by Corporal Durnan. The issue before the Court is whether Mr. Smith's waiver of his *Miranda* rights at 11:25 a.m. on the shoulder of I–95 after being warned by Corporal Durnan of the Delaware State Police was still in effect when he was interrogated at 2:00 p.m. in the Wilmington DEA office by Agent Glanz, a federal official.

In determining whether a subject has waived his *Miranda* rights, the United States Supreme Court has directed the trial courts to examine the totality of the circumstances surrounding the waiver. *Wyrick v. Fields*, 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214 (1982). In *Wyrick*, the Court reversed the eighth circuit appellate court decision establishing a *per se* rule that *Miranda* warning must be re-given prior to questioning after a polygraph examination. *Id.* at 48–49, 103 S.Ct. at 396–97. Based upon the Supreme Court's injunction against using *per se* rules to determine the validity of a *Miranda* rights waiver, neither the lapse of two and a half hours between the initial waiver and Agent Glanz's interrogation, nor the move from I–95 to the DEA office, nor questioning by a federal officer after warnings given by a state officer, by themselves create an invalid waiver. However, this Court must consider how much weight to give these factors in determining whether the warnings given by Corporal Durnan were in effect during Agent Glanz's interrogation.

Other circuits have not found determinative the fact that *Miranda* warnings were given by an official of an agency other than the agency of the interrogator. Considering whether a city police officer had to re-*Mirandize* a suspect given warning by the FBI before questioning on the same subject, the United States Court of Appeals for the Fifth circuit in *United States v. Hopkins*, 433 F.2d 1041 (5th Cir.1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971), noted interrogation by officials of different agencies on unrelated subject matters might require a reiteration of the *Miranda* warnings. *Id.* at 1045. Observing that "Miranda warnings, once given, are not to be accorded unlimited efficacy or perpetuity," the court found the initial warnings sufficient because one, there was no significant time lapse between the two interrogations; two, both questionings covered the same subject matter; and three, nothing happened to dilute the efficacy of the initial warnings. *Id.* See also *United States v. Nordling*, 804 F.2d 1466, 1471 (9th Cir.1986) (no need for Narcotics Task Force to re-*Mirandize* suspect warned by Harbor Police after no appreciable time gap or move of suspect).

Finding that that a lapse of time between the giving of the *Miranda* warning and the interrogation must be considered in light of the suspect's knowledge and conduct and other relevant circumstances, the United States Court of Appeals for the Eighth Circuit held that a five-hour gap by itself did not invalidate the initial waiver of *Miranda* rights. *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985). See also *Martin v. Wainwright*, 770 F.2d 918, 930–31 (11th Cir.1985) (when suspect

reminded of his rights given a week previous no reiteration required), *cert. denied,* —— U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *Jarrell v. Balkcom,* 735 F.2d 1242, 1253–54 (11th Cir.1984) (*Miranda* warnings given by one county police official effective when second official interviewed suspect four hours later after he was transported from City Hall to headquarters to the DA's office and back to headquarters), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

Considering the totality of the circumstances, the Court concludes that Agent Glanz's failure to repeat the *Miranda* warnings does not mandate suppression of Mr. Smith's statement to Agent Glanz. Approximately two and a half hours elapsed from the time Corporal Durnan gave Mr. Smith the warnings and Agent Glanz's interview. Mr. Smith indicated to Corporal Durnan that he understood his rights, and a gap of two and a half hours is insufficient for Mr. Smith to have forgotten. At no time did Mr. Smith request an attorney or indicate that he did not want to continue talking. Although Mr. Smith was transported from I–95 to Troop 6 and then to the DEA office, nothing occurred during his travels to invalidate his waiver. Neither Corporal Durnan, nor Trooper Thomas, nor Agent Glanz in any way coerced or threatened or made promises to Mr. Smith. Agent Glanz knew that Corporal Durnan had given the suspect his warnings. Importantly, both Agent Glanz and Corporal Durnan questioned Mr. Smith concerning the same subject matter.

■ Although, based upon these facts, the Court concludes that the *Miranda* warnings given by Corporal Durnan were effective for Agent Glanz's interviews, the Court cautions officials not to rely on warnings given by another official at an earlier time. The earlier warnings could be found ineffective or intervening events could invalidate them. Law enforcement officials can quickly and easily reiterate the warnings and avoid these risks.

An order will issue denying defendant's motion to suppress the statement given to Agent Glanz because he failed to repeat the warnings given by Corporal Durnan two and a half hours earlier.