**Gary D. MATNEY Petitioner–Appellant,**

v.

**John C. BATTLES, Respondent–Appellee.**

No. 00–4293.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 12, 2001.*

Decided Oct. 19, 2001.

Before COFFEY, KANNE, and DIANE P. WOOD, Circuit Judges.

ORDER

Gary Matney was convicted in Illinois state court of first-degree murder and sentenced to 45 years' imprisonment. Matney filed a motion under 28 U.S.C. § 2254, claiming, among other things, that his waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not knowing and

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

intelligent. The district court denied the motion but granted a certificate of appealability. We affirm.

## I. Background.

In July 1995 a train hit Ronald Pecore (who had been lying on the tracks) and killed him. While investigating Pecore's death as a suicide, police discovered that he had been living at a nearby campsite and found a citation bearing Matney's name on the path from the campsite to the tracks. Police sought Matney for questioning and found him in a bar at approximately 1:00 a.m. the morning following Pecore's death. Matney agreed to go the police station to be interviewed.

At the station, Matney, who has an I.Q. of 69, told Officer Theodore Meeker that he had consumed more than a case of beer that day. Matney also said that he had been drinking with Pecore on the day he was killed, that the two had argued, and that Matney was "mad enough to kill" Pecore. Officer Meeker then stopped the interview and read Matney his *Miranda* rights. Matney stated that he understood his rights and agreed to continue the interview. Two new officers, Daniel Colin and John Crilly, then transported Matney to the Lake County Sheriff's station to audiotape his interview. During taping Matney confessed to beating Pecore and then dragging him unconscious to the tracks to make his death look like a suicide.

Before trial Matney moved to suppress his confession. At the suppression hearing defense witnesses testified that Matney was an alcoholic, that he drank excessive amounts of beer and wine coolers throughout the day of his confession, and that he was extremely intoxicated that day. Dr. Steven Rothke, a clinical neuropsychologist, testified that Matney's history of head trauma, alcohol and drug abuse, and low intelligence rendered him unable to knowingly and intelligently waive his rights.

The state's witnesses offered a different opinion of Matney's abilities. Officer Meeker testified that Matney appeared rational and coherent at the time of his interview; that he "seemed like he had had a little bit to drink, but other than that, he walked fine; he didn't stumble or stagger or anything like that." Officer Meeker also testified that Matney was familiar with the criminal justice system, having been arrested approximately 20 times before. Officers Colin and Crilly testified that Matney appeared to have been drinking but that he did not appear intoxicated; that he did not slur his speech, stumble, or lose his balance and that he understood their questions. Dr. Henry Lahmeyer, a psychiatrist, opined that a person with low intelligence still could knowingly and intelligently waive his rights. Dr. Lahmeyer testified that he had examined Matney, and that Matney said he understood his *Miranda* rights. Dr. Lahmeyer also testified that he found no evidence of organic brain disease and no evidence that Matney's alcoholism had affected his ability to form the thought processes necessary to knowingly and intelligently waive his rights.

The trial court denied Matney's motion to suppress. Emphasizing Dr. Lahmeyer's testimony and Matney's familiarity with the criminal justice system, the court concluded that Matney possessed the mental capacity to understand his rights. The court also concluded that alcohol did not impair Matney's ability intelligently to waive his rights on the day he confessed. The court had listened to the tape of Matney's confession and determined that he understood and was responsive to the questions, that he did not slur his words, and that he seemed in control of his faculties.

Matney was convicted and appealed to the Appellate Court of Illinois ("Appellate Court"). The Appellate Court affirmed, concluding among other things that the trial court's finding that Matney's waiver of his *Miranda* rights was valid was not against the manifest weight of the evidence. The Appellate Court noted that "[w]hether a defendant intelligently waived his rights depends upon the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused." The Illinois Supreme Court denied Matney's petition for review.

In September 1999 Matney filed his § 2254 motion, again contesting the validity of his waiver. Matney also asserted several other *Miranda* violations and claimed that he received ineffective assistance of counsel because his attorney failed to present his alibi evidence. The district court denied the motion, concluding that the Appellate Court's decision that Matney's waiver was valid was neither contrary to nor an unreasonable application of Supreme Court precedent. The district court rejected Matney's remaining claims on the ground that they were procedurally defaulted because Matney failed to raise them in state court, a conclusion Matney does not challenge on appeal.

## II. Analysis.

On appeal, Matney again challenges the validity of his waiver. Matney also challenges one of the trial court's jury instructions, and claims that he received ineffective assistance of counsel because his lawyer failed to present evidence of the victim's violent history. We limit our review to the validity of Matney's waiver, because Matney failed to raise the remaining claims before the district court and thus waived them. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir.2001); *Winsett v. Washington*, 130 F.3d 269, 272 (7th Cir.1997). In addition, Matney's claim that he received ineffective assistance of counsel because his attorney failed to present his alibi evidence has also fallen out of the case at this point: even though the district court granted a certificate of appealability on this issue, Matney abandoned it when he did not argue it in his appellate brief. *See United States v. Walls*, 225 F.3d 858, 862 (7th Cir.2000).

A petitioner is not entitled to habeas corpus relief under § 2254 unless a state court's adjudication of a matter "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "contrary to" standard governs only a narrow range of cases where a state court applies the wrong rule to decide a question of law or confronts facts "materially indistinguishable" from a Supreme Court case but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir.2000).

The broader "unreasonable application" standard governs if the state court (1) unreasonably applies the correct legal rule to the facts, (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or (3) unreasonably refuses to extend a legal principle to a new context where it should apply. *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. We take a pragmatic approach to the inquiry, asking whether the state-court decision is "at least minimally consistent with the facts and circumstances of the case" or "if it is one of several equally plausible outcomes." *Boss v. Pierce*, 263 F.3d 734, 741–42 (7th Cir.2001) (citations omitted).

Although Matney did not specify which standard he believes entitles him to relief, it can only be the "unreasonable application" one. His case does not fit within the "contrary to" standard, given the fact that the Appellate Court used the correct legal analysis when it considered all of the facts and circumstances surrounding Matney's confession. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.") (internal quotation and citation omitted). Matney is entitled to habeas corpus relief only if the Appellate Court's decision was an unreasonable application of *Moran's* "totality of the circumstances" standard.

██ Matney argues that his waiver was not intelligent because the combination of his low I.Q., intoxication during interrogation and past organic brain injury prevented him from understanding his rights and the consequences of abandoning them. Impairments caused by physical conditions, drugs and alcohol are appropriate factors for a court to consider when evaluating a *Miranda* waiver. *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir.1997). Despite Matney's claimed impairments, however, the totality of the circumstances supports the Appellate Court's decision. Matney does not deny that he is familiar with the criminal justice system, that he was able to understand his *Miranda* rights when Dr. Lahmeyer examined him, and that during his taped interview he was responsive and spoke clearly. Officers testified that Matney seemed unimpaired and had no trouble walking on the day he confessed. The Appellate Court's decision thus was reasonable.

Matney also argues that his waiver was not intelligent because Officers Colin and Crilly failed to administer his *Miranda* warnings a second time just before his taped interview. We do not consider this aspect of Matney's waiver argument because he failed to raise it before the district court. *See Schoenfeld*, 237 F.3d at 793; *Winsett*, 130 F.3d at 272. We note, however, that because Officer Meeker advised Matney of his rights just before his taped interview and he validly waived them, the police were not required to advise him of his rights again during the same interrogation. *Cf. Wyrick v. Fields*, 459 U.S. 42, 48–49, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

The judgment of the district court is therefore AFFIRMED.