**[J-48-2013][M.O. – Castille, C.J.]**
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 99 MAP 2012 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered on 3/1/12 at No. 646 |
| | : | MDA 2011 which reversed and |
| v. | : | remanded the PCRA Order of the |
| | : | Dauphin County Court of Common |
| | : | Pleas, Criminal Division, entered on |
| | : | 12/27/06 at No. CP-22-CR-0001407- |
| | : | 1998 |
| ELTON EUGENE HILL, | : | |
| | : | |
| Appellee | : | SUBMITTED:  May 3, 2013 |

**CONCURRING OPINION**

**MR. JUSTICE SAYLOR**                    **DECIDED:  November 21, 2014**

I believe that the trial and post-conviction records raise many questions concerning the stewardship of Appellee's trial counsel.  Within days of the attorney's retention, and absent any evidence of an independent investigation on the lawyer's part, he recommended that Appellee submit to a polygraph examination.  Counsel's explanation was that, because his "heart and everything [Appellee] said to me, I believed that this would be a very positive thing[.]"  N.T., April 25, 2006, at 50; see also id. at 14 ("I thought that this could possibly be an outstanding result for us.").  Although the attorney would have been permitted at least to watch (albeit without hearing) the polygraph examination from another room, N.T., July 26, 2006, at 22, he nonetheless returned to his office to address another matter, see id. at 15.  This left an uncounseled

seventeen-year-old client to make a written statement to the polygraph examiner, then to be turned over to the investigating officer for what can only be reasonably described as an ensuing full-scale interrogation. See N.T., April 25, 2006, at 15, 106.

Of course, the result of the polygraph examination was anything but positive for Appellee, as he made key damaging admissions, which were used very effectively by the Commonwealth at trial. In this regard, Appellee indicated that he said to his co-perpetrator that he "wouldn't mind beating [a member of the victims' family's] ass" and that he was present on the victims' property close in time to the ensuing crimes. N.T., November 18, 1998, at 285. Indeed, from all appearances, the animus which Appellee admitted – for the first time to the polygraph examiner – appears to have been the impetus for the home invasion that followed.[1]

One constraint counsel did impose, however, was to expressly accede only to a waiver of his client's constitutional rights relative to the polygraph examination, as conducted by the certified polygraph examiner. See Majority Opinion, slip op. at 9-10 (reflecting that Appellee's waiver embodied "consent to talk with me[, i.e., Detective Steenson, the certified polygraph examiner,] without the presence of an attorney" (emphasis added)). Counsel explained, in this regard, that he considered Detective Steenson to be a "very fair" person. N.T. April 25, 2006, at 13-14, quoted in Majority Opinion, slip op. at 7. Having agreed to a waiver incorporating such constraint, the

---

[1] Despite the obvious damage to the defense caused by such admission, even at the post-conviction stage and after his client had been sentenced to serve 15 to 84 years in prison, trial counsel continued to attempt to cast the best light on his own performance. In this regard, the lawyer maintain that the polygraph proceedings to which he had consented yielded "helpful" results, as Appellee had maintained that he never entered the victims' house, and his admissions therefore merely reflected "a young man who finally fessed up[.]" N.T., April 25, 2006, at 22; id. ("[T]he statement, in my mind, I still feel that way, was helpful to [Appellee].").

attorney was obviously surprised to learn that an aggressive interrogation had been conducted by another detective.  See N.T., April 25, 2006, at 52.[2]

In this landscape, I would answer the question presented on a narrower basis than the majority opinion reflects.  Because Appellee's express written waiver, as approved by his counsel before the lawyer surrendered his client to police, was limited to examination by the polygraph examiner, I would hold that a distinct waiver was required to support subsequent interrogation by a different officer.[3]  In such circumstances, whether or not counsel should have anticipated a factor-based approach such as the First Circuit adopted in United States v. Leon-Delfis, 203 F.3d 103 (1st Cir. 2000), I believe he should at least have been aware of the express scope of the written

---

[2] These circumstances presented also raise questions concerning the legitimate scope of a post-polygraph examination, in particular, when its umbrella is large enough to extend from an exploration by the examiner of the reasons for indications of deception during actual testing, into a full-scale interrogation by a different detective.  The present record, however, is not developed in a manner which would permit further elaboration on such questions.  For example, beyond anecdotal explanations by the detectives involved in the present case, no evidence was presented concerning whether there are accepted parameters or guidelines relative to post-polygraph interviews (e.g., whether they are to be conducted by a certified examiner, whether they are to proceed in a dispassionate fashion, etc.).

[3] In this regard, I differ with Mr. Justice Eakin's suggestion that we are addressing a "general unrestricted waiver."  Concurring Opinion, slip op. at 5.  In point of fact, as noted in the text above, Appellee's actual express waiver is specific in its terms to questioning by a specific certified polygraph examiner.  I know of no authority to support the notion that it is impossible to construct a limited waiver of the Sixth Amendment right to counsel for the conduct of a polygraph examination entirely by an identified, certified polygraph examiner.  Moreover, what the concurrence dismisses as a "precise limitation," see id. at 7, is simply the limitation appearing in the waiver's text.  To the extent the concurrence suggests the waiver should not be enforced on its terms because there is no independent evidence to believe the parties meant for such limitation to apply as written, this appears to represent a novel approach to the interpretation of express waivers.

waiver executed by his client.[4]  Moreover, counsel's explanations for failing to seek suppression (i.e., that the post-polygraph interviews actually were helpful) are exceptionally weak when read against the impact of Detective Kelly's extensive trial testimony recounting the interrogation, which culminated with Appellee's breaking down, crying, and protesting that he did not want to go to jail.  See N.T., November 18, 1998, at 286-98.

I realize that we are speaking in matters of degree, but I have previously commented on the enforcement of a "strong presumption of effectiveness," Majority

---

[4] Justice Eakin's suggestion that Appellee implicitly waived his right to counsel in the post-polygraph timeframe, see Concurring Opinion, slip op. at 7-8, overlooks that, once an accused invokes that right, he cannot later waive it unless he initiates the dialogue with police or counsel is present.  See Edwards v. Arizona, 451 U.S. 477, 484-87, 101 S. Ct. 1880, 1884-86 (1981); Commonwealth v. Keaton, 615 Pa. 675, 701, 45 A.3d 1050, 1065 (2012).  Although the concurrence indicates that prior decisions of this Court have approved a finding of an implicit waiver under "similar circumstances" to those of the present case, Concurring Opinion, slip op. at 8, the decisions it references are inapposite because the defendants in those matters had not invoked their right to counsel before making the statements at issue.  Hence, those cases do not undermine the concept that, to be admissible, any further communication with the police – most notably here, with Detective Kelly – had to have been initiated by Appellee or undertaken upon further waiver while counsel was present.

I recognize that Edwards was clarified relative to post-polygraph interviews in Wyrick v. Fields, 459 U.S. 42, 103 S. Ct. 394 (1982).  See Majority Opinion, slip op. at 21-22.  In that matter, the Supreme Court noted that merely disconnecting a polygraph machine does not itself terminate a waiver that was executed for the purpose of permitting a lie-detector test to be administered.  See Wyrick, 459 U.S. at 47, 103 S. Ct. at 396.  However, Wyrick reaffirmed Edwards' totality-of-the-circumstances standard for determining whether the questioning was within the scope of the waiver, and the Court did not indicate that such a waiver extends beyond its express terms or to questioning by a police officer other than the one who administered the polygraph test.  Additionally, Wyrick stated that the right to have counsel present re-attaches upon a substantial change in circumstances after the lie-detector test is administered.  See id.  In my view, interrogation by a different law enforcement officer who is not subsumed by the written wavier amounts to such a change in circumstances.

Opinion, slip op. at 35, in scenarios in which courts are seeing much the opposite. Cf., e.g., Commonwealth v. Elliot, ___ Pa. ___, ___, 80 A.3d 415, 452-53 (2013) (Saylor, J., concurring); Commonwealth v. Sepulveda, 618 Pa. 262, 344, 55 A.3d 1108, 1157 (2012) (Saylor, J., concurring). Here, I find the arguable merit and reasonable-basis prongs of the ineffectiveness inquiry to be readily satisfied relative to trial counsel's failure to seek suppression -- at least of Appellee's statements made to the investigating officer -- after counsel's apparent reliance on blind faith and heartstrings yielded essentially the opposite of the desired "outstanding result," N.T., April 25, 2006, at 14, in a continuing course of interrogation beyond what the lawyer had anticipated, see id. at 52. Nevertheless, I agree with the majority that the Superior Court's prejudice assessment was highly superficial and, accordingly, support the award of a remand for additional consideration in such regard.